THE MISSOURI, KANSAS & TEXAS RAILWAY COMPANY v. P. B. STONER.

No. 907.

1. **Railway Company — Receiver — Penalty for Nondelivery of Freight.**—Under the statute (2 Sayles' Civil Statutes, article 4258a, section 3) imposing a penalty on railways for the acts of their officers, agents, and employes, for the detention of freight after tender of the freight charges due, as shown by the bill of lading, a company is not liable to the penalty for such detention where it occurred while the road was in the hands of a receiver.

2. **Same—Connecting Lines—Contract Rate.**—The receipt of freight by one common carrier from another to forward to point of destination does not bind the receiving carrier to the terms of the contract made by the initial carrier with the shipper, where such terms are not known to the receiving carrier, and there is no partnership relation between such carriers.

3. **Same — Interstate Rate Governs, when.**—Where interstate freight is shipped over connecting lines which have agreed on a joint tariff of rates in compliance with the interstate commerce act, the delivering line must collect the interstate commerce rate, and not that named in the bill of lading.

4. **Same—Collection of Charges Advanced.**—Where a carrier makes a contract of shipment for a rate less than the interstate rate of the other lines over which the freight is forwarded, the delivering carrier may collect not only the interstate rate, but also the charges of the contracting lines, where such charges have been advanced to it by the connecting lines at the usual rates, and in ignorance of the special contract.

APPEAL from County Court of Cooke. Tried below before Hon. J. E. HAYWORTH.

*R. C. Foster* and *A. E. Wilkinson*, for appellant.— 1. A railway company which has received and transported freight coming to it over connecting lines, advancing to them their regular rates, and completing the transportation over its own road, with no information that any other than the usual and published rates for through transportation were agreed on by the shipper with the carrier on whose line the shipment originated,

is not bound under our statute to deliver the property on tender of less than its regular rates for transportation over its own line and the freights so advanced to the connecting lines, when it never made or authorized or ratified, otherwise than by such acts, the contract for through transportation at a less rate. Railway v. Dwyer, 75 Texas, 578; Schoul. on Bail., 546; Hutch. on Carr., sec. 478a, and note 7; Crossan v. Railway, 40 Am. and Eng. Ry. Cases, 136; Vaughan v. Railway, 9 Am. and Eng. Ry. Cases, 41; Schneider v. Evans, 25 Wis., 241; Wolf v. Hough, 22 Kan., 629; Wells v. Thomas, 27 Mo., 17; Knight v. Railway, 9 Am. and Eng. Ry. Cases, 90; Railway v. Murray, 45 Am. and Eng. Ry. Cases, 334.

2. The Act of the Legislature of Texas of May 6, 1882, if construed to require defendant to recognize and carry out a contract, made without its authority by another railway, for interstate transportation over its own and other connecting lines, at a less compensation than the regular published rates charged to other shippers for the same transportation, would be void, so far as it was sought to give it such effect, because in conflict with the Act of Congress of the United States of February 4, 1887, known as the Interstate Commerce Act, and its receipt and transportation of the property, though done under and with a knowledge of the terms of the original contract, would not make it lawful for it to carry at such rate. Act of April 10, 1883, Laws of 1883, p. 67, sec. 7; "An Act to regulate commerce," Laws of U. S., approved February 4, 1887, amended March 2, 1889; Morris v. The State, 62 Texas, 738; Baird v. Railway, 42 Am. and Eng. Ry. Cases, 281, with which compare Railway v. Hannaford, 30 Am. and Eng. Ry. Cases, 67; Pound v. Turck, 95 U. S., 462; Lusy v. Hardee, 135 U. S., 100; Railway v. Husen, 95 U. S., 465; Crutcher v. Commonwealth, 141 U. S., 47; Cool. on Const. Lim., 586.

*Potter, Potter & Giddings*, for appellee.—1. The appellant company having received the shipment from a connecting line in a country where there was no statute requiring one company to receive the freight tendered by another, such freight to be transported by it into Texas, is charged with the knowledge and ratification of the rate fixed in the bill of lading and of the penalties fixed by the laws of Texas for demanding more freight than that fixed in the through bill of lading. Railway v. Lillard, 16 S. W. Rep., 654; Railway v. Dwyer, 75 Texas, 578; Railway v. Tisdale, 74 Texas, 8; Mash v. Railway, 6 Am. and Eng. Ry. Cases, 359; Fitch v. Newberg, 1 Douglas, 6; Jones v. Railway, 63 Me., 188; Hutch. on Carr., sec. 478a, and note.

2. The appellant company not having made the contract for the shipment of the cattle, but having received said cattle from another line for further shipment, could in no event be made responsible for discrimination under the act of Congress called the Interstate Commerce Act. But

had it made the contract itself, and had it become fully subject to the penalties of that act, it would not authorize it to violate a plain statute of Texas, nor shield it from the penalties of that statute. Railway v. Lillard, 16 S. W. Rep., 654; Railway v. Dwyer, 75 Texas, 578.

HEAD, Associate Justice.—Appellee sued appellant to recover damages for the conversion of three head of Holstein cattle, and also the statutory penalty for their detention for six days after tender of the amount of freight due, as shown by the bill of lading. Judgment was rendered in his favor in the court below for $350, the value of the cattle, and $200 penalty, from which this appeal is taken.

Appellee's petition charged that the penalty was incurred while appellant was in the hands of receivers, but it had since assumed all obligations incurred by them. In Bonner v. Co-operative Association, 4 Texas Civ. App., 166, it is held, that receivers of a railway are not subject to the penalty imposed by the statute upon which this suit is based. The statute only imposes the penalty upon *railways for the acts of its officers, agents, or employes*, and not upon carriers generally (2 Sayles' Civil Statutes, article 4358a), and it is well settled that one suing for a penalty must recover, if at all, according to the terms of the statute. Schloss v. Railway, 85 Texas, 601. A receiver of a railway is neither its officer, agent, nor employe, but is the officer of the court making the appointment. Turner v. Cross and Eddy, 83 Texas, 218. We therefore think appellant was not liable for the penalty allowed.

The bill of lading was issued by the Newport News & Mississippi Valley Company, at Fulton, Kentucky, and stipulated for a through freight rate to Gainesville, Texas, of $1.07 per 100 pounds, but did not name its connecting carriers, and limited its own liability to its line. It had no contract or arrangement with appellant for the issuance of such bills, nor is it charged in appellee's petition that any partnership or joint traffic arrangement existed between these companies.

Appellant did have a joint tariff of rates over its own and connecting lines from Memphis to Gainesville, which seems to have been made under such circumstances as to subject these lines to the penalties prescribed by the Interstate Commerce Law. This rate was $1.23 per 100 pounds on estimated weight for live stock such as these. These cattle were transported by the carrier which made the contract from Fulton to Memphis, and there delivered to a connecting carrier, which paid its charges and conveyed them to Waggoner, in the Indian Territory, and there delivered them to appellant, which paid all the previously accrued charges and completed the carriage to Gainesville. The charges paid by appellant when it received the cattle were according to its regular tariff of rates, and it had no notice of a special contract at a lower rate until appellee

exhibited his bill of lading at Gainesville, after the arrival of the stock there.

Upon these facts the court gave the following charge to the jury: " It is the duty of the railway company to transport and deliver to the consignee all freight received by it for shipment; and if such shipment is made under a through bill of lading fixing and providing the through rate of freight, and if such shipment is made under such bill of lading and none other, then and in that event all railways over which such shipment is made are bound by such through rate, except it be a connecting line that makes the connection in a State where, by reason of some statute, such line is compelled to accept and transport all shipments tendered it by such connecting line."

It will thus be seen that the court below held the law to be, that whenever one carrier receives goods from another destined to a point on its line, without making a new contract, it thereby becomes a party to and bound by the contract made by the initial carrier with the owner, whether it has notice of its terms or not. We do not understand this to be the law.

Where goods are properly tendered to a common carrier for shipment, the common law requires it to receive them, and if no special contract is made for compensation, it has a right to charge its reasonable and customary rates for like service. Where the goods are received from a connecting carrier, and the petition charges a partnership between the two, the facts set forth in the charge are admitted in evidence to sustain this allegation; and if the partnership be established, each of the carriers will be bound by the contract as made, because it is its contract. Railway v. Tisdale, 74 Texas, 8; Railway v. Baird, 75 Texas, 256.

This may also be said where one carrier is alleged to have ratified a contract made by the other. But ratification presupposes knowledge of what one is ratifying, and this is neither alleged, proven, nor submitted in the charge in this case. The issues of partnership and ratification, when properly raised by the pleading, are ordinarily questions of fact for the jury. We believe the court erred in charging the jury, as a question of law, that the receipt of freight by one carrier from another binds him to the terms of the contract with the owner, provided there be no statute such as ours in force when the goods are received.

But in this case there is an insuperable objection to requiring appellant to deliver the cattle upon tender of the amount due as shown by the bill of lading issued by the Newport News Company. It was both alleged and proved in the court below, that this was interstate commerce, and. from Memphis to Gainesville passed through several States over connecting lines of railroad which had agreed upon a joint tariff of rates in compliance with the Act of Congress regulating commerce between the States, and that this rate was much more than that stipulated for in the bill of lading for the entire distance. Under these circumstances, it has several

times been held in this State, that the delivering line must collect the interstate commerce rate, and not that named in the bill of lading.   Dillingham v. Fischl, 1 Texas Civ. App., 546; Railway v. Nelson, decided by us October 25, 1893.   [4 Texas Civ. App., 345.]

It may, however, be answered, that appellant is nevertheless guilty of a conversion, because it demanded not only the amount due under the interstate commerce rate from Memphis to Gainesville, but also the amount that had been advanced to the contracting carrier at Memphis; and as under its contract this carrier would not be entitled to anything if its connecting lines consumed all appellee was to pay, appellant should not have been allowed to collect anything for it.   Had not these charges already been paid to the contracting carrier by appellant, without notice of the terms of the contract, we believe this would be correct (Railway v. Marsh, 57 Indiana, 505), but even as to this there is much conflict in the authorities.   Vaughan v. Railway, 9 Am. and Eng. Ry. Cases, 41, and note; same case, 13 R. I., 578.   But where the connecting carrier advances the charges of the preceding one at the *usual rates, without notice* of any special arrangement between it and the owner, the decided weight of authority seems to be in favor of the holding that the delivering carrier can demand of the consignee payment of the charges so advanced, and the owner must then look for reimbursement to the contracting carrier upon its guaranty.   Schneider v. Evans, 25 Wis., 241; Wolf v. Hough, 22 Kans., 629; Wells v. Thomas, 27 Mo., 17; Schoul. on Bail., sec. 610; Hutch. on Carr., sec. 478a; Rorer on Rys., 1263; Vaughan v. Railway, supra.

The inconvenience which would result to shippers generally should connecting carriers adopt the practice of each one collecting its own charges, and of holding the goods until these are paid, as they would have the right to do, seems generally to have been regarded as sufficient reason for adhering to the views above indicated, and we shall not now undertake to dissent therefrom.   The present and long continued custom among carriers, for each succeeding one to advance for the owner the charges of those preceding it, is certainly very convenient to shippers and greatly speeds the carriage; and we do not feel disposed to make a ruling which, if accepted as the law, would have the effect of requiring every carrier, when goods are tendered to it by a connecting line, to delay receiving them until the original contract with the owner could be investigated. Either this would result, or we must treat every carrier as having authority to bind all others by its contracts, which we have no power under the law to do.

The judgment of the court below will be reversed and the cause remanded.

*Reversed and remanded.*

Delivered November 15, 1893.