**McCLESKEY et al. v. McCLESKEY.**
(No. 3003.)

Court of Civil Appeals of Texas. Amarillo.
May 23, 1928.

Rehearing Denied June 20, 1928.

**1. Partition ⬿3—Evidence, in action to avoid partition deed for mental incapacity, held sufficient for jury.**

Evidence, in action to set aside a partition deed made in settlement of rights in estate, *held* sufficient to go to the jury on the issue of plaintiff's lack of mental capacity at the time to enter into the contract.

**2. Partition ⬿8—Ratification of, or waiver of right to attack, partition deed, held question for jury.**

Under evidence, in action to set aside partition deed, whether plaintiff ratified it or waived her rights *held*, under the evidence, a question for jury.

**3. Contracts ⬿97(2)—Full knowledge is necessary for ratification.**

There can be no ratification without full knowledge of all the facts.

**4. Partition ⬿8—Plaintiff, suing to set aside partition deed, need not offer to return property to which she is entitled in any event.**

Plaintiff, in action to set aside a partition deed made in settlement of rights in estate, need not offer to return and restore personal property, to which the other party would not be entitled in any event.

**5. Partition ⬿8—Defendants refusing to rescind, plaintiff need not tender back property as condition to action to set aside partition deed.**

Plaintiff, as condition to bringing action to set aside partition deed made in settlement of rights in estate, need not tender back property received thereunder; defendants having refused to rescind, and at all times insisted contract should be affirmed.

**6. Contracts ⬿266(1)—Restoration in kind is not necessary condition to action to rescind; contract being executed before rescission offer.**

Where contract is executed before offer to rescind, restoration in kind is not necessary as condition to action to rescind.

**7. Partition ⬿8—Plaintiff held not estopped to insist on rescission of partition deed because collecting rents and interest and appropriating to own use.**

Plaintiff having repudiated contract under which partition deed sought to be set aside was given in settlement of rights in estate, and it not being shown she was acting under it or in affirmance of its terms, she is not estopped to insist on rescission because collecting rents and interest and depositing them in bank and appropriating them to her own use.

**8. Trial ⬿219—Words in charge, not being technical, held not required to be defined by court.**

Court need not define the words "capacity to comprehend the terms of the deed and the consequences of her act" in the charge; the language not being technical.

**9. Partition ⬿8—In action to set aside partition, appraiser's testimony that he would not have acted had plaintiff indicated she was not mentally capable held properly excluded.**

Testimony of one who, at suggestion of defendants, acted as plaintiff's appraiser in the settlement of rights in an estate pursuant to which was made the partition deed sought to be set aside, that, if plaintiff had indicated to him that she was not in a mental condition to make a settlement, he would not have acted in the matter, *held* properly excluded.

**10. Partition ⬿63(2)—Testimony as to amount of rents received held properly admitted in partition action.**

Action being one to cancel and rescind a partition deed, made in settlement of parties' rights in estate, and for an accounting, and for partition of the estate, testimony of the amount of rents received from certain of the property was properly admitted as showing fact necessary for adjustment and settlement of rights.

**11. Partition ⬿63(2)—Evidence of plaintiff in partition having several times left deceased husband held properly excluded.**

Evidence that plaintiff, in action for partition of deceased's husband's estate, had several times left him, was properly excluded; degree of her devotion not being in issue.

**12. Evidence ⟶113(1)—Sum per month obtainable for pasturing cattle and number which could be pastured held incompetent to establish market value of land.**

The sum that could be obtained per month for pasturing milch cows for various parties and the number that could be pastured per acre on the land *held* not competent to establish the market value of the land.

**13. Trial ⟶370(3)—Refusal to submit material special issue of ratification or waiver raised by pleadings and evidence in suit to avoid partition deed held error.**

Whether plaintiff, in suit to set aside partition deed, had waived her right to rescind, and by her subsequent dealing with the property had ratified her deed, being a material issue raised by the pleadings and evidence, it was error to refuse the requested special issue submitting it.

**14. Partition ⟶8—Plaintiff's right to have partition deed set aside held not defeated by expenditures on the estate relying on the deed.**

Any right of plaintiff to have set aside partition deed made in settlement of rights of the parties in an estate is not defeated by defendants having paid debts of the estate, relying on the deed, as this could be adjusted in the partition sought.

**15. Partition ⟶3—Test of mental capacity relative to right to have partition deed set aside stated.**

The test of whether plaintiff could, for lack of mental capacity at the time of execution of partition deed in settlement of the rights of the parties in an estate have it set aside, *held* to be whether she was then of sufficient mental capacity and condition to know and understand the nature and consequences of her act.

Appeal from District Court, Wichita County; P. A. Martin, Judge.

Suit by Mrs. E. A. McCleskey against Sam McCleskey and others. Judgment for plaintiff, and defendants appeal. Reversed and remanded.

See, also, 277 S. W. 1115, and 286 S. W. 616.

Fitzgerald & Hatchitt, of Wichita Falls, for appellants.

Bullington, Boone, Humphrey & King, of Wichita Falls, for appellee.

HALL, C. J. The appellee, as the surviving wife of E. A. McCleskey, filed this suit to set aside a partition deed which she had made, together with the children of her deceased husband by a former marriage, which deed purported to settle the property rights between the parties interested. She alleges that, at the time she executed the partition deed, with a view of settling her interest in her deceased husband's estate and their community property, she was grief stricken and sorely distressed on account of the death of her husband, and that, at the time of her husband's death, and long prior thereto, she had been in ill health, and in a highly nervous condition, and this condition, on account of the sudden manner of the death of her husband, was greatly aggravated, resulting in a nervous shock, which incapacitated her mentally for a long time thereafter from understanding or transacting any business matter; that the appellants, the children of her deceased husband by a former marriage, knowing of her mental and highly nervous condition, and that she was in such a state of mind that she could be easily persuaded to act to her injury, and with the intention of taking advantage of her and defrauding her, began, immediately after the death of her husband, to importune her to surrender her inheritable interest in said estate, and, knowing that she was wholly ignorant of the extent or value of the estate of her husband, or of the amount to which she was entitled under the laws of this state, and knowing that she was wholly incapacitated to transact any business whatsoever, made an offer of settlement to her which was grossly inadequate, upon the fraudulent and false representations that the offer so made was in excess of the value of her inheritable interest, and which representations the appellants knew were untrue at that time.

In addition to a general demurrer and a general denial, the appellants answered, pleading estoppel, waiver, and ratification of the deed of partition, after she became aware of its legal effect and was possessed of her right mind, and, while in that condition, she accepted the property conveyed to her in said deed, assumed control and management thereof, and used and collected the rents and revenues therefrom; that she accepted the money given her in the settlement as a consideration for said deed, placed it to her own credit in the bank, and contracted with reference thereto, and asserted ownership of said money and the other property, and appropriated rents and revenues of said property to herself; that she had induced and allowed the appellants to borrow money and pay debts owing by the estate, without giving them any notice of her intention not to be bound by the partition deed, and allowed them to place themselves in a position, relative to said estate, that they would not have done had she not executed the deed.

The case was first tried July 10, 1925, resulting in a judgment for appellee, which was reversed upon appeal to the Fort Worth Court of Appeals (286 S. W. 616). The case was again tried on the 18th day of May, 1927, and submitted to the jury upon one issue of fact as follows:

"Did the plaintiff, Mrs. E. A. McCleskey, at the time she executed the partition deed in evidence before you, have sufficient mental capacity to understand the nature and subject of such partition and the consequences of her act in signing it?"

⟶For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

The jury returned a negative answer, and the court rendered a judgment in accordance therewith, canceling the deed and setting the settlement aside.

It appears that, prior to the time she married E. A. McCleskey, appellee had been married, and, as a result of that marriage, was the mother of several children. At the time she married E. A. McCleskey, he had four children by a former marriage, namely, Sam, residing in Tarrant county, Henry, residing in Gray county, Mrs. Friberg, residing in Tulsa, Okl., and Mrs. Zink of Wichita Falls; that, during his first marriage, E. A. McCleskey had acquired an estate of real and personal property of the approximate value of $40,000; that he owned a farm near Iowa Park, upon which he resided with appellee at the time of his death. He died suddenly some time during the night of February 11th; the exact hour of his death being unknown. Upon awaking next morning, appellee found that he was dead, and, upon discovery of that fact, she alleges she sustained a severe nervous shock, amounting to nervous prostration, and, for some time thereafter, was in a dazed condition, and, in a great measure, did not know what was going on nor what she was doing, and was not mentally able to appreciate the significance of her acts in entering into the settlement. It appears that Henry and Sam McCleskey came out to see her the day after the funeral, asking for a settlement of the property rights between them, and that Sam wanted to know whether she wanted to settle by agreement or wanted them to go to court with it, and advised her to make a settlement without a lawsuit. It further appears that appraisers were appointed who undertook to value the property, and that, on the 20th day of February, the partition deed which she seeks to set aside and annul in this action was executed.

[1] The first contention by the appellants is that the court should have instructed a verdict for them, because there was no testimony showing the condition of her mind at the time she executed the instrument, except her own evidence, and that the court should have set the verdict of the jury aside, because the great weight and preponderance of the testimony introduced by appellants shows that the condition of her mind at and just prior to the time she executed the deed was normal.

This contention is overruled. The evidence was sufficient to justify the court in submitting that issue to the jury. Dr. Clark, a practicing physician who had been treating her for nervous indigestion for some time prior to the death of her husband, and who was called to the residence early in the morning after the death of McCleskey, testified that her condition, at that time, was one of complete prostration, and, without objection, he testified that he thought the period of her

mental incapacity thereafter would be about one month. There is a preponderance of testimony to the effect that on Saturday morning after the burial of her husband on Friday, when Sam and Henry McCleskey visited her, she was not in a condition, on account of her extreme nervousness, to discuss business affairs, and she so told them. In the selection of the appraisers, it appears that she agreed to the suggestion of Sam McCleskey that a Mr. Tanner should act as her appraiser, and it further appears that she consulted the attorney named by the attorney who represented Sam and Henry McCleskey, and did not act in these matters upon her own independent judgment. She described at great length her mental condition, and her testimony has evidently been accepted by the jury as forming, in a large measure, the basis of their finding in response to the issue submitted.

Because there was evidence raising the issue of appellee's mental capacity to enter into the contract of settlement, the court did not err in submitting that issue, nor was there error in the court's failure to peremptorily instruct against her upon that ground, and his refusal to set the verdict aside because there was no evidence to sustain it. The propositions advancing these contentions are therefore all overruled.

By the sixth proposition, it is insisted that the court should have peremptorily instructed a verdict for the appellants, because the overwhelming weight and preponderance of the testimony disclosed that, at the time she executed the partition deed, her mind was normal; "there being absolutely no testimony to the contrary." This contention is certainly not sustained by the record, and is, of course, overruled.

[2] By the seventh proposition, the appellants contend that the court should have peremptorily instructed a verdict for them, because the undisputed evidence disclosed that, long after Mrs. McCleskey had executed the deed, and after she knew all of the facts, and after she knew the terms, conditions, and consequences of her act and deed, and what property she had obtained, and while she was in an absolutely normal condition mentally, ratified said deed and act by exercising ownership and control over the property she had obtained.

The record shows that on the 18th of March she notified Sam McCleskey that she would not be bound by the settlement, and in that letter tendered the $2,000 which she had received, together with the house and lot in Iowa Park. This was about a month after the settlement. There is nothing in the record to show when she learned that she had not received anything near her share of the estate in the settlement, nor when she first learned that the property which was allotted to the appellants in the partition deed

was worth a great deal more than they had represented to her.

[3] It is a fundamental rule that there can be no ratification without full knowledge of all the facts and circumstances. There is evidence to support the proposition that she did not know the value of the property nor the extent of her interest as the surviving wife, at the time she agreed to divide the property without a lawsuit. Under the facts disclosed by the record, her ratification or, rather, waiver, was a question of fact for the jury, and a peremptory instruction by the court would have been improper. Gulf, C. & S. F. Ry. Co. v. Franklin (Tex. Civ. App.) 155 S. W. 553; Wells v. Houston, 29 Tex. Civ. App. 619, 69 S. W. 183; Mo., etc., Ry. v. Stoner, 5 Tex. Civ. App. 50, 23 S. W. 1020.

The appellants filed no objections to the court's charge, but there is an assignment upon the ground that the court failed to submit the issue of ratification to the jury, and it will be considered later in this opinion.

[4] Much is said in appellants' brief with reference to the failure of the appellee to tender back the property which she received in the partition agreement. As stated above, she did, on March 18th, offer to return the $2,000 and reconvey the house and lot in Iowa Park. She did not offer to return the automobile, the milch cow, household and kitchen furniture, and chickens. As a matter of law, she was entitled to retain the personal property, and the rule is that one seeking to rescind and cancel a contract is not required to offer to return and restore to the other party property which the latter would not be entitled to in any event. Cearley v. May, 106 Tex. 442, 167 S. W. 725.

The rule is stated in 9 C. J. 1210, § 97, as follows:

"One who seeks to rescind an instrument is not bound to restore that which he would be entitled, in any event, to retain. The consideration, if money, need not be returned where, in case of a decree in favor of plaintiffs, defendant will be required to account for a greater sum."

The same doctrine is stated in "Hunt on Tender," § 33, in the following language:

"One who attempts to rescind a contract on the ground of fraud is not required to restore that which, in any event, he would be entitled to retain, either by virtue of the contract sought to be set aside, or of the original liability. * * * Nor is a return necessary either at law or in equity, if the judgment asked for will give the defendant all he is entitled to. * * * It is not necessary to tender the consideration received as a prerequisite to an action to cancel a deed, if the grantee has rents in his hand. So a tender of the amount received upon a compromise of a claim against an insurance company is not a condition precedent to a suit in equity to rescind the compromise upon the ground of fraud, if a recovery upon the policy is

also sought. In equity, full and complete relief can be given in the one action and the amount received by plaintiff may be credited upon the amount due him under the policy."

[5] For a stronger reason, we think the contentions urged by appellants upon this branch of the case are without merit. Appellants had refused to rescind, but have at all times insisted that the contract should be affirmed, and are still so insisting by this suit.

In 2 Black on Rescission and Cancellation, § 623, it is said:

"When one having ground for the rescission of a contract, and demanding it, offers to return to the other party the article or property which he received under the contract and is met by an unqualified refusal to accept such return, this will obviate the necessity of a manual production and proffer of the property in question, or any formal tender of it as a condition to the right to maintain an action for rescission. Citing Hagelstein v. Blaschke [Tex. Civ. App.] 149 S. W. 718. * * * Moreover any insufficiency in a tender of rescission and return will be waived by an absolute refusal of the other party to entertain the proposal at all."

The author further states, however, that, under such circumstances, the tenderor holds the property in the character of a bailee, and must use reasonable care to make the other party's loss as light as possible.

The general rule in Texas is that an offer to restore is not a condition precedent to the bringing of a suit for that purpose. Tompkins v. Johnson (Tex. Civ. App.) 86 S. W. 953; Wells v. Houston, 23 Tex. Civ. App. 629, 57 S. W. 584; Garza v. Scott, 5 Tex. Civ. App. 289, 24 S. W. 89.

As said in 9 C. J. 1209, § 95:

"The rule that a plaintiff seeking rescission must, as a condition of relief, restore to defendant all benefits received under the contract, is founded obviously on the principle that he who seeks equity must do equity. Conversely, wherever under the circumstances of the particular case, restitution by plaintiff is not essential to the complete administration of justice between the parties, it will not be required. As was said in a well-considered decision, 'As to willingness to restore, or offer, or competency, in that regard it goes no further than justice requires. The rule in regard to the matter is equitable not technical. Unreasonable or impossible things which would not, under the circumstances, tend to secure equity are not required.' " Dawson v. Sparks, 1 Posey Unrep. Cas. 735; Simmons v. Lemons (Tex. Civ. App.) 258 S. W. 868; McDonald v. Simons (Tex. Com. App.) 280 S. W. 571.

[6] Moreover, the contract in this case was executed before the offer to rescind, and therefore restitution in kind is not necessary. Green v. Hopper (Tex. Civ. App.) 278 S. W. 286.

[7] The facts that appellee collected the rents from the building and the interest upon the $2,000, which she deposited in the bank, and appropriated these sums to her own use,

do not, under the above rules and the equities of this case, estop her from insisting upon a rescission. She had repudiated the contract, and it was not shown that she was acting under it or in affirmance of its terms.

Aside from all this discussion, however, these circumstances merely raise an issue of fact as to her waiver of her right to rescind. No objections to the court's charge were filed, but the appellants have assigned error here upon the refusal of the court to submit such issue, and this action of the court will be discussed later. Appellants' insistence here that upon these facts the court should have directed a verdict cannot be sustained.

[8] The appellants requested the court to define what was meant in the court's charge by "capacity to comprehend the terms of the deed and the consequence of her act." The court refused this request, and such refusal is made the basis of complaint under proposition No. 9. We think this contention is without merit. The language used was, in nowise, technical, and required no definition by the court.

[9] The court did not err in excluding the proffered testimony of Tanner, to the effect that, if Mrs. McCleskey had indicated to him that she was not in a mental condition to make a settlement, he would not have acted in the matter of the settlement.

[10] This being a suit to cancel and rescind a settlement deed and for an accounting, and it further appearing that, by the pleadings, the parties had converted the action into one for partition of an estate, it was not error for the court to permit Gorsline to testify what amount of rent had been received for the property in Wichita Falls. This was a fact necessary to be ascertained in order to make a proper adjustment and settlement between the parties.

[11] It was not error to exclude testimony to the effect that appellee had left her husband three different times during their married life. The degree of her devotion to him was not an issue in this case.

[12] The testimony of Mrs. Dale should have been excluded. In the first place, she was not qualified to testify as to the market value of the farm. Moreover, what sum could be obtained per month for pasturing milch cows for parties living in Iowa Park, and how many cows could be pastured per acre upon the pasture land, was not competent evidence to establish the market value of the tract.

[13] The pleadings and evidence raise the issue whether appellee had waived her right to rescind, and, by her subsequent conduct in dealing with the property, had ratified her deed of partition formerly executed. This was a material issue, and the court erred in refusing to give the special issue requested by the appellants upon that point.

[14] There was no error in refusing the requested special issue of appellants upon the question of estoppel. If appellee was entitled to have the settlement set aside, the fact that appellants had borrowed money and had paid the debts of the estate, relying upon the validity of the settlement, would not defeat appellee's right to set the settlement aside and have a partition, because the court, in its final judgment, could, by charging appellee's interest in the estate equitably, adjust the rights of the parties with reference to whatever amounts appellants had borrowed for the payment of debts.

[15] The court did not err in submitting the issue inquiring whether the appellee was wholly or partially incapacitated at the time she executed the deed. The test was whether she was, at that time, of sufficient mental capacity and condition to know and understand the nature and consequences of her act in entering into the settlement agreement, and in signing and delivering the deed. This was substantially the issue which the court submitted.

The judgment is reversed, and the cause remanded.