**BURLESON v. MORSE.**

No. 11539.

Court of Civil Appeals of Texas. Galveston.

May 27, 1943.

Rehearing Denied June 17, 1943.

Harris & Coltzer and George W. Coltzer, all of Galveston, and Albert J. De Lange, Frank A. Stamper, and Robert P. Beman, Jr., all of Houston, for appellant.

Markwell & Stubbs and Henry W. Flagg, all of Galveston, for appellee.

GRAVES, Justice.

This appeal is from an $8,255 judgment in appellee's favor against appellant, as the sum found to be due upon her three promissory notes to him for $2,500 each, entered by the 10th District Court of Galveston, County, partly in response to a jury's findings on special issues submitted and partly upon independent findings of the court itself from the pleadings and evidence.

Appellant inveighs here against such adverse determination to herself through 34 points, which may be consolidated into these groups:

(1) The court erred in a number of particulars in its submission to the jury of the issue of whether or not the appellant had sufficient mental capacity to execute such three notes as attorney's fees, for and in consideration of his having so represented her in her trial for murder in a South Carolina court, which she was shown to have signed while an inmate of the Woman's Penitentiary at Columbia, South Carolina, following her conviction for manslaughter at such trial;

(2) The court erred in many of its rulings upon the evidence during such trial, towit, in admitting the holding of the Commission of South Carolina as to the sanity of the appellant, as well as in receiving the non-expert testimony as to her mental capacity of the witnesses, Savage and Sapp, along with that on the same subject of the witness, Dr. Harris, as a qualified expert witness; especially in association with its further erroneous admission of copies of other instruments than these notes in suit—such as deeds of trust purportedly securing borrowed money from Texas banks, without proof of the instruments, or the circumstances of the transactions evidenced thereby;

(3) The court erred in excluding the testimony of the appellant herself respecting her mental condition, and that tending to show the appellee's knowledge of the conditions she would have adduced.

(4) The court improperly and inadequately submitted the issue of whether or not the appellant was under duress, at the time of and in having executed the three notes in suit, as she so did;

(5) The issue respecting the value of appellee's services to appellant, including the related one of whether or not the aggregate amount of three notes constituted a reasonable attorney's fee in the circumstances, as well as whether or not they had been executed upon specified representations of the appellee, were likewise erroneously submitted.

(6) The three notes sued upon were usurious, in that they were dated June 1 of 1940, carrying 6% interest per annum from date and payable on or before 60, 90, and 120 days after date, respectively, but they were not actually executed until August 1 of 1940;

(7) There was no competent evidence before the court of the reasonable value of the services as an attorney rendered by the appellee to appellant, in that the court improperly admitted the testimony of the appellee himself touching that inquiry, as well as that of his witnesses, Kenyon and Sapp;

(8) The appellee's declared-upon legal services were "illegal", in that they were in part for legal services in South Carolina and in its courts, in which State appellee was not shown to have been licensed to practice law.

While perhaps not embracing all of appellant's detailed presentments, the given summary is thought to at least cover the controlling ones of them.

After careful examination of the extended record, under the light of able

briefs and oral arguments for both sides, it is concluded that none of her assignments present reversible error, in view of the state of the proceedings, as brought here.

As presaged, the suit was brought by the appellee against the appellant as a simple one to enforce and collect the balance due on the three $2,500 promissory negotiable notes declared upon. She, by answer, as a sole defense on the facts, declared that "On information and belief, she did not have capacity to make, execute, and deliver the notes, either at the date thereof, or at the date of the alleged delivery thereof, or at any other relevant time."

There were added averments to the effect that the appellee, having been her attorney at the date of the notes, stood in a fiduciary capacity in any legal services he may have rendered her that formed the basis for the signing of them in the form declared upon by him, and that he was then and there well aware of her stated mental and nervous condition; that while so serving as her attorney and occupying such position of trust toward her, and while she was still in prison in South Carolina, she had been put under a state of duress in the matter of the execution of such notes, and that they had been in fact signed—to use her own averment—"upon the insistence of plaintiff that said notes be signed in said amount, such statements being made by him at a time when defendant was in prison when the aforesaid trial and appeal was imminent and required, and when said defendant was under such duress and coercion."

Whereupon, following an extended trial on the merits, the court submitted what it deemed to be the controlling issues of fact raised by the pleadings and evidence to a jury in some six inquiries, including those, (1) as to whether or not the appellant had had sufficient mental capacity to execute the sued-upon notes at the date thereof, (2) whether the appellee had obtained them through duress exercised by him against appellant, (3) as well as whether he had then stood in the fiduciary relationship of attorney toward her, and (4) whether he had misinformed her as to the value of the legal services rendered by him for her in connection with the case against her in South Carolina, (5) what did the jury find to be a reasonable fee to the appellee for the services he rendered the appellant in connection with that case against her, and (6) "as part of consideration for the notes

sued upon, had the said plaintiff advised or condoned the shooting by the defendant of Mrs. Burleson?"

The jury answered all these inquiries in the appellee's favor, to the effect that appellant did have such mental capacity, that appellee did not obtain the notes from her through the exercise by him of any duress against her, that he had not misinformed her as to the value of the legal services he had rendered her, and that he had neither advised nor condoned the shooting by her of Mrs. Burleson, who was the second wife of her own former husband.

The judgment, as indicated, followed with the addition of further findings, as recited therein, by the court independently of the verdict.

This court finds no fault with the form of the submission of the question raised as to appellant's mental capacity to execute the notes in suit—it having been a simple inquiry as to whether she had "sufficient mental capacity to execute said notes", followed by the definition: "By the term 'mental capacity' is meant the possession of sufficient mind and memory to understand the nature and effect of her act in executing the notes inquired about."

Since the burden was plainly on appellant as the maker thereof to establish her sole defense of a lack of mental capacity at the date thereof to execute the notes, the trial court submitted the matter in the approved form. 10 Tex.Jur. 60; Smith v. Thornhill, Tex.Com.App., 34 S.W.2d 803; Id., 25 S.W.2d 597, and Court of Civil Appeals opinion, 12 S.W.2d 625; McCleskey v. McCleskey, Tex.Civ.App., 7 S.W.2d 657; Shelton v. Shelton, Tex.Civ.App., 281 S.W. 331; Wisdom v. Peek, Tex.Civ.App., 220 S.W. 210; Cheesborough v. Corbett, Tex. Civ.App., 155 S.W.2d 942, error dismissed.

Neither was prejudicial error shown in the admission of exemplified copies of the judicial proceedings in the South Carolina court, with reference to the appellant's mental capacity at the time of her trial for murder therein, which occurred just shortly before her signing of the notes involved; that is, she had been tried in that court for murder in May of 1940, her sole defense to the murder charge having been that she was insane at the time; it had, therefore, been necessary for the jury in that court to preliminarily pass upon that question before it further found whether or not she had killed the person she was

charged with having killed. As just indicated, these transactions in the South Carolina court were all shown by exemplified copies of that court's proceedings, as well as the subsequent ones in her trial for murder, and such documents showed, under proper court seals and certificates, that both such preliminary hearing as to sanity and the succeeding one as to her guilt or innocence on the murder charge, had been had by the court of Richland County, South Carolina, and that she was found to be sane in the former, but convicted of manslaughter in the latter.

Such exemplified copies were, therefore, under the full faith and credit provision of the United States Constitution, Article 4, § 1, properly received in the court below. U.S.C.A., Title 28, Section 661; 26 Tex.Jur. 521; 17 Tex.Jur. 663; 36 Tex. Jur. 672, 675; Joy v. Joy, Tex.Civ.App., 156 S.W.2d 547–551, error dismissed.

The same adverse holding must be made upon appellant's complaint against the admission of the testimony of the witnesses, Savage, Sapp, and Dr. Titus Harris. These witnesses were not testifying as to nor expressing their opinions concerning the capacity of the appellant to execute the particular instruments—that is, the three $2,500 promissory notes—which formed the subject-matter of this suit, as were the facts in the authorities relied upon by her in this connection; in other words, none of the witnesses were asked as to whether, in their opinion, the appellant had the mental capacity to understand her action in executing these notes. On the contrary, they, that is, Mr. Savage, Mr. Sapp, one of her attorneys in the murder trial, and Dr. Titus Harris, were simply testifying that—out of their intimate knowledge of and observance of the appellant in her different business and professional contacts with them of near the same time the notes were given, Mr. Savage as a banker, Mr. Sapp as such attorney, and Dr. Harris as a physician and psychiatrist—they each had considered her normal and sane, and had not observed any act or transaction of hers that led them to believe that she was anything else, during all their acquaintance with her, than a sane person. Under these authorities alone, the opinions expressed by these witnesses, of both expert and lay character, were admissible. McDaniel v. Willis, Tex.Civ.App., 157 S.W. 2d 672, error refused; Kincheloe v. Kincheloe, Tex.Civ.App., 152 S.W.2d 851.

Appellant's insistence that the court should not have excluded her own testimony to the purport and positive effect that she had not been of sound mental condition when the notes were executed is obviously, it is thought, not well taken. These statements by her occurred in her testimony by deposition, and the objections thereto did not go to the manner and form of taking the deposition, but directly to the testimony itself as being conclusions and opinions, without proper predicates, wholly immaterial, etc.,—she having therein volunteered to assert—attempting even to give expert opinion as to—the existence, degree, and extent of the insanity she claimed to have been afflicted with at that time; indeed she so inserted such declarations in response to a written interrogatory to her, which merely inquired "whether or not Mr. Bleecker L. Morse carried out his agreement with you? If not, state in what particular he failed."

On elementary principles she could not be permitted in this tangential and non-responsive way of treating the simple question so asked her—against the many pertinent objections thereto—to make herself out to the jury as having been insane, with no other or better warrant than her own ipse dixit; especially so, when the uncontroverted state of the record otherwise showed that she had previously used this same sole defense of insanity on at least two other occasions: (1) In answer to her former husband's suit for divorce against her; (2) as a bar to conviction in her described trial for the murder of his second wife in the South Carolina court.

Since the objections, as stated, did not challenge the manner and form of taking the deposition, R.S. Article 3765 was not applicable, hence they were properly presented at the trial, under these authorities: Mayton v. Sonnerfield, Tex. Civ.App., 48 S.W. 608; Lott v. King, 79 Tex. 292, 15 S.W. 231; City of Magnolia Park v. Crooker, Tex.Civ.App., 252 S.W. 341; Woosley v. McMahan, 46 Tex. 62; Purnell v. B. F. Gandy & Son, 46 Tex. 190; Schallert v. Boggs, Tex.Civ.App., 204 S.W. 1061; Article 3769, Subdivision 8, R.C.S.; 15 Tex.Jur. 81 et seq.

The undisputed evidence showed that the three notes were executed after the completion of the appellee's declared-upon services as an attorney to the appellant as being in payment therefor, and, since the jury's verdict, on sufficient evidence, further

established that she was mentally competent to then so execute them, it is this court's conclusion that a valid and enforceable contract was thereby entered into between these two parties, rendering the question of whether or not the fee so agreed upon was a reasonable one immaterial. These authorities are cited as supporting that view. 5 American Jurisprudence, 358; 19 A.L.R. 850.

However, if it should be held that the question of reasonableness as to the fee involved was properly raised as an issue of fact, the same result must follow anyway, because the jury found that a reasonable fee for the services so rendered amounted to approximately the same figure as the aggregate found by the court to have been due upon the notes.

The claim for usurious interest in this contract thus held to have been established is overruled as being without merit. This, upon the consideration that the undisputed evidence on this feature showed that the debt due the appellee for his services had become due on the completion of the court proceedings against the appellant in South Carolina prior in time to that upon which the notes in question were dated and signed; wherefore, the fact that the notes had not been signed until a month or so subsequent to their common dates of June 1, 1940, that is, on August 1 of 1940, became immaterial, and did not make them call for a usurious rate of interest. 42 Tex.Jur. 907; Cole v. Horton, Tex.Civ.App., 61 S.W. 503; Carroll v. Green, Tex.Com.App., 285 S.W. 305.

Finally, it would seem that the testimony of Messrs. Kenyon and Sapp as to what, in their opinions, was a reasonable fee for the appellee's services in this instance, were clearly admissible, if that inquiry itself was a material one; these attorneys were shown to be specialists in the practice of criminal law, of wide experience and backgrounds in their separate states, which would seem to have qualified them to give their opinions as experts on that subject in a criminal case, in response to interrogatories outlining the circumstances applicable to that inquiry as tried out in this cause. Caulk v. Anderson, 120 Tex. 253, 37 S.W.2d 1008; Lombard v. Bayard, 15 Fed.Cas. pages 791, 795, No. 8,469, 1 Wall Jr. 196, affirmed in 9 How. 530, 50 U.S. 530, 113 L.Ed. 245.

There seems to be neither pleading nor evidence to the effect that these notes in question had been given for any illegal services, as appellant's objection on that ground tends to indicate; moreover, since the jury found that appellee did not advise nor condone the shooting by appellant of the second Mrs. Burleson in South Carolina, and this record also fails to show any pleadings or proof upon the appellant's part that a license to practice law in South Carolina would have been required of the appellee under the circumstances of this case, no issue as to any such illegal service was presented. To the contrary, the appellee was shown to have appeared in the courts there along with Mr. Sapp, a resident attorney, as well as United States District Attorney for the Eastern District of South Carolina, whom he had associated with himself to conduct appellant's trial.

Further discussion is foreborne, since these conclusions require an affirmance of the judgment; it will be so ordered.

Affirmed.