NO. 12-09-00151-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *DEREK BARBEE, GUARDIAN OF THE PERSON AND ESTATE OF RICKY BARBEE, APPELLANT* | § | *APPEAL FROM THE 273RD* |
| *V.* | § | *JUDICIAL DISTRICT COURT OF* |
| *TAMMY BARBEE, APPELLEE* | § | *SHELBY COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

Derek Barbee, as guardian of the person and estate of his father, Ricky Barbee, appeals from the final divorce decree and protective order rendered by the trial court in Tammy Barbee's suit for divorce from Ricky. In four issues, Derek contends the evidence is legally and factually insufficient to support the verdict, the protective order is void, Tammy lacked authorization to file suit against Ricky, and the trial court erred in admitting certain evidence. We affirm.

## BACKGROUND

Tammy and Ricky were married on June 2, 1978, and divorced in 1990. Tammy testified that Ricky was in and out of her life, as she continued to raise their three children, until 1995. On October 7, 1995, Ricky suffered a serious head injury. They began to live together again, and Tammy took care of Ricky while he recuperated. Tammy was appointed Ricky's guardian on February 19, 1997. After years of Ricky's affairs and abuse, Tammy filed for divorce on July 18, 2008, claiming their informal marriage had become insupportable. She later resigned as guardian. Derek was appointed guardian for his father and appeared on his behalf in the divorce suit. After a trial before the court, the court found that an informal marriage existed between Tammy and Ricky, ordered that they are divorced, and divided their property and debts. On the same day, the court signed a final protective order prohibiting Ricky from committing certain acts. Derek appeals those orders on his father's behalf.

1

In his first issue, Derek contends the evidence is legally and factually insufficient to support the trial court's finding that an informal marriage existed between Tammy and Ricky. He argues that Ricky, deemed incompetent by a guardianship court, is not competent to enter into an informal marriage and, that as Ricky's guardian, Tammy was required to obtain court approval of the marriage before Ricky could enter into it. He also argues there was no agreement to be married and neither Ricky nor Tammy held themselves out to the public as being married. Derek also points out that Tammy signed several documents indicating she was single.

**Standard of Review**

When the trial court acts as a fact finder, its findings are reviewable for legal and factual sufficiency of the evidence by the same standards applicable in reviewing the sufficiency of the evidence supporting a jury's finding. ***Anderson v. Seven Points***, 806 S.W.2d 791, 794 (Tex. 1991). A party who challenges the legal sufficiency of the evidence to support an issue on which it did not have the burden of proof at trial must demonstrate on appeal that there is no evidence to support the adverse finding. ***Croucher v. Croucher***, 660 S.W.2d 55, 58 (Tex. 1983). In reviewing for legal sufficiency of the evidence, we consider the evidence in the light most favorable to the verdict, indulging every reasonable inference in favor of the verdict. *See* ***Autozone, Inc. v. Reyes***, 272 S.W.3d 588, 592 (Tex. 2008) (per curiam); ***Associated Indem. Corp. v. CAT Contracting, Inc.***, 964 S.W.2d 276, 286 (Tex. 1998). To determine whether legally sufficient evidence supports a challenged finding of fact, the reviewing court must credit favorable evidence if reasonable jurors could, and disregard contrary evidence unless reasonable jurors could not. *See* ***City of Keller v. Wilson***, 168 S.W.3d 802, 807 (Tex. 2005). The final test for legal sufficiency must always be "whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review." ***Id***. at 827.

We sustain a legal sufficiency or "no evidence" challenge when the record discloses one of the following situations: (1) there is a complete absence of evidence of a vital fact, (2) the court is barred by rules of law or of evidence from giving weight to the only evidence of a vital fact, (3) the evidence offered to prove a vital fact is no more than a mere scintilla, or (4) the evidence conclusively establishes the opposite of the vital fact. ***Id***. at 810. Anything more than a scintilla of evidence is legally sufficient to support the finding. *See* ***Cont'l Coffee Prods. Co. v. Cazarez***, 937 S.W.2d 444, 450 (Tex. 1996).

If a party is attacking the factual sufficiency of the evidence to support an adverse finding on an issue on which the other party had the burden of proof, the attacking party must demonstrate that there is insufficient evidence to support the adverse finding. ***Westech Eng'g,***

2

*Inc. v. Clearwater Constructors, Inc.*, 835 S.W.2d 190, 196 (Tex. App.–Austin 1992, no writ). In addressing a factual sufficiency of the evidence challenge, an appellate court must consider and weigh all of the evidence. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986). The verdict should be set aside only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Id*. However, this court is not a fact finder, and we may not pass upon the credibility of the witnesses or substitute our judgment for that of the trier of fact, even if a different answer could be reached upon review of the evidence. *Durban v. Guajardo*, 79 S.W.3d 198, 208 (Tex. App.–Dallas 2002, no pet.)

Appellate courts review conclusions of law de novo. *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002). An appellant may not challenge a trial court's conclusions of law for factual insufficiency; however the reviewing court may review the trial court's legal conclusions drawn from the facts to determine their correctness. *Id*. Conclusions of law will not be reversed unless they are erroneous as a matter of law. *Tex. Dep't of Pub. Safety v. Stockton*, 53 S.W.3d 421, 423 (Tex. App.–San Antonio 2001, pet. denied).

## Applicable Law

The three elements of an informal marriage are (1) an agreement to be married, (2) after the agreement, living together in Texas as husband and wife, and (3) representing to others in Texas that they were married. TEX. FAM. CODE ANN. § 2.401(a)(2) (Vernon 2006). A proponent may prove an agreement to be married by direct or circumstantial evidence. *Russell v. Russell*, 865 S.W.2d 929, 933 (Tex. 1993). Proof of cohabitation and representations to others may constitute circumstantial evidence of an agreement to be married. *Id*. The statutory requirement of "representing to others" is synonymous with the judicial requirement of "holding out to the public." *Lee v. Lee*, 981 S.W.2d 903, 906 (Tex. App.–Houston [1st Dist.] 1998, no pet.). "Holding out" may be established by conduct and actions of the parties. *Id*.

## Discussion

In its order appointing Tammy guardian, the probate court found Ricky to be incompetent. At trial, Derek attempted to convince the trial court that no agreement to be married could have been entered into because Ricky did not have the mental capacity to enter into a contract. A contract with a person of unsound mind is voidable, not automatically void. *See Williams v. Sapieha*, 94 Tex. 430, 433, 61 S.W. 115, 116 (1901). The burden was on Derek to establish this defense. *See Burleson v. Morse*, 172 S.W.2d 361, 363 (Tex. Civ. App.–Galveston 1943, writ ref'd w.o.m.). Derek asked the trial court to file findings of fact and conclusions of law, but he did not request specific findings or conclusions. The trial court found that Tammy and Ricky agreed they were married, and it concluded that Tammy and Ricky

3

entered into an informal marriage. The court made no finding or conclusion regarding Derek's defense of incapacity.

Rule 299 of the Texas Rules of Civil Procedure provides that the trial court's findings of fact form the basis of the judgment on all grounds of recovery and defense embraced therein. TEX. R. CIV. P. 299. Further, on appeal, the judgment will not be presumed to be correct based on a defense when no element of that defense has been found by the trial court. *Id*. A party asserting an affirmative defense in a trial before the court must request findings in support of such a defense in order to avoid waiver on appeal. *Sears, Roebuck & Co. v. Nichols*, 819 S.W.2d 900, 907 (Tex. App.–Houston [14th Dist.] 1991, writ denied). Where the trial court files findings that do not establish any element of the ground of defense, the party relying upon that defense must file a request for additional findings to avoid waiver of that defense on appeal. *Id*. Derek did not request additional findings on his defense of incompetence. His failure to request findings on his defense of incompetence therefore results in waiver of the issue. *Id*.

Tammy explained that she was married to Ricky from 1978 until 1990. She specifically testified that they began to live together again in 1995 and have been married since then. She said that she has represented to everyone that they were married, sometimes in Ricky's presence, and he did not deny it. Tammy testified that they had an agreement to be married and represented to the public that they were married. She explained that she took care of him after his accident. She loved him and wanted to be there. She went with him to his psychological evaluation in 1996. That evaluation refers to Tammy as Ricky's wife. She also presented a release of lien signed before a notary in August 1996 identifying her as Ricky's wife. In 1997, Tammy received $150,000.00 in settlement of her claims arising out of Ricky's accident, apparently based on her status as his wife.

On cross examination, Tammy said she lived as Ricky's wife and felt married in her heart. She also stated that she and Ricky had a joint checking account.

Joann Williams, who "was seeing" Ricky from 2004 until 2008, explained that they only saw each other out of town. She also testified that she found out he was married to Tammy, after he broke up with her when one of Tammy's friends told her.

Jaqueline Swindle testified that, during 2004 and 2005, she had a sexual relationship with Ricky. He told her he was married, and they always met out of town.

Clarence Weaver testified that he is Tammy's father and that Ricky is a good friend of his. He said that Ricky has represented to him that he and Tammy were married, and they lived together as husband and wife.

4

Johnny Lewis testified that Tammy was the treasurer and piano player of a church where he was the pastor. He has known her since 1999. He testified that Tammy said Ricky was her husband and their reputation in the church was that they were married.

Marilyn Lewis is a lifelong friend of both Tammy and Ricky. She testified that Tammy and Ricky were married and that Tammy referred to herself as Ricky's wife when she went back to him after the divorce. According to Marilyn, Tammy did not make a secret of being married and Ricky knew Tammy represented herself as his wife. She testified that Tammy and Ricky were perceived in the community as husband and wife. Specifically, she explained that everyone she has been around always "felt like" they were married.

There is evidence that Ricky knew Tammy considered them to be married and he did not correct her. Although Ricky had girlfriends during the pertinent time period, he told one of his girlfriends that he was married and he saw two of them only at out of town locations. The trial court was entitled to infer from this evidence that Ricky believed he was married. *See Associated Indem. Corp.*, 964 S.W.2d at 286.

The record contains evidence that would enable a reasonable and fair-minded trier of fact to find that Tammy and Ricky agreed to be married, lived together in Texas as husband and wife, and represented to others in Texas that they were married. *See City of Keller*, 168 S.W.3d at 827. Thus, the evidence is legally sufficient to support the trial court's conclusion that an informal marriage existed. *See id*.

In reviewing Derek's factual sufficiency complaint, we consider all of the evidence. *See Cain*, 709 S.W.2d at 176. Joann Williams testified that Ricky told her he was not married. Considering the fact that she also said they only saw each other out of town, the trial court could have concluded that Ricky lied to her about not being married and saw her only in other towns to avoid detection.

Carrie Edmonds testified that Ricky has been her boyfriend since Tammy and Ricky separated. However, she thought they were already divorced and did not know anything about an informal marriage. She thought Tammy stayed in the same home as Ricky only as a guardian and that the legal proceedings involved only "a property thing." The trial court could have determined that Ricky was not entirely candid when he explained his personal situation to Edmonds.

Tammy admitted that she had an affair with someone and, in April 2008, applied for a marriage license in Polk County swearing that she was "not presently married." She explained that she did not know how to end an informal marriage. Also, she was hurt and confused at the time and she wanted Ricky to feel what she had felt because of his affair with Williams. She said that she and Ricky celebrated their thirtieth anniversary in 2008 but, at the time, Ricky was

having an affair with Edmonds. In her application for appointment of guardian, she identified herself as "the one who cares for" Ricky. Tammy denied knowing what her duties as guardian entailed, explaining that she thought it was set up so she could make medical decisions for Ricky. Her application to be appointed guardian states that Ricky is in need of a guardian to handle his financial and legal affairs and to assure that his medical and day to day needs were met. However, Tammy maintained that, during the time she was Ricky's guardian, she lived as his wife.

In 2007, Tammy filed her federal tax return as "single." In prior years, after the 1990 divorce, she filed as "head of household." An accountant testified that only an unmarried person can file as "head of household." Further, Tammy testified that she helped Ricky prepare his 1995 tax return and he filed as "single." In 2002, Tammy signed a deed to some property as a single woman. However, Derek introduced many other documents generated between 1996 and 2003 that did not identify Tammy as a single woman.

There is evidence that Tammy agreed to be married to Ricky, lived with Ricky as his wife, and held herself out to the community as being married to Ricky. The community, including her friends, her father, and her church, considered them married. The trial court was entitled to disregard the fact that Tammy identified herself as single in certain documents. *See Lee*, 981 S.W.2d at 906; *In re Giessel*, 734 S.W.2d 27, 31 (Tex. App.–Houston [1st Dist.] 1987, writ ref'd n.r.e.) (Representations in tax returns and other documents that a party was single go to the weight of the evidence; they do not negate a marriage as a matter of law.). Thus, declarations in the various legal documents executed by Tammy to the effect that she was single do not negate the marriage relationship shown by the evidence to have existed at the time. *See DeBeque v. Ligon*, 292 S.W. 157, 158 (Tex. Comm'n App. 1927, holding approved).

While Ricky had girlfriends during the time of the alleged informal marriage, one of Ricky's girlfriends said Ricky told her he was married. Further, the fact that Ricky met two of his girlfriends only at out of town locations indicates he did not want to be seen.

Considering all of the evidence, the trial court's determination that an informal marriage existed between Tammy and Ricky is not so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *See Cain*, 709 S.W.2d at 176. The evidence is legally and factually sufficient to support the trial court's finding that an informal marriage existed between Tammy and Ricky.[1] We overrule Derek's first issue.

---

[1] As explained in our discussion of Derek's fourth issue, the trial court erroneously allowed Tammy to present evidence of two online obituaries that identified her as Ricky's wife. We do not consider that evidence for purposes of our sufficiency review.

## PROTECTIVE ORDER

In his second issue, Derek contends the final protective order signed by the trial court is either void or voidable. He argues that Family Code Section 84.001 requires the trial court to set a hearing within fourteen days after the application for protective order is filed, which was not done in this case. Derek cites to no cases in support of his contention and implicitly argues that this provision is jurisdictional. Tammy filed her application in October 2008, and the final protective order was signed May 6, 2009.

On the filing of an application for a protective order, the court shall set a date and time for the hearing unless a later date is requested by the applicant. TEX. FAM. CODE ANN. § 84.001 (Vernon 2008). Except as provided by Section 84.002, which is not applicable here, the court may not set a date later than the fourteenth day after the date the application is filed. *Id*. The Family Code does not contain specific consequences for noncompliance with the fourteen day limitation. The purpose of the provision, like similar statutes, appears to be to ensure prompt resolution of the applicant's request. *See In re E.D.L.*, 105 S.W.3d 679, 687-88 (Tex. App.—Fort Worth 2003, pet. denied). Further, the purpose of the statute would not be served if noncompliance resulted in dismissal for want of jurisdiction. *See id*. We conclude that the final protective order, even though signed six months after the application was filed, is neither void nor voidable merely because the hearing was not held within fourteen days of the date the application was filed. We overrule Derek's second issue.

## AUTHORIZATION BY GUARDIANSHIP COURT

In his third issue, Derek contends that Tammy, who filed her original petition for divorce at a time when she was Ricky's legal guardian, could not bring suit for divorce against Ricky, her ward, without the prior authorization of the court that appointed her as his guardian. Although Ricky had legal counsel who filed an answer and a counter petition on his behalf, no motion to dismiss was ever filed. The appropriateness of filing suit against one's ward was never raised in the trial court and was therefore waived. *See* TEX. R. APP. P. 33.1(a); *Edwards v. Tex. Emp't Comm'n*, 936 S.W.2d 462, 466 (Tex. App.–Fort Worth 1996, no writ). Further, once Tammy resigned as guardian and Derek was named guardian for Ricky, the issue became moot. We overrule Derek's third issue.

## ADMISSIBILITY OF EVIDENCE

In his fourth issue, Derek contends the trial court erred in admitting into evidence two obituaries that had been published in on online newspaper called ShelbyCountyToday.com. He

argues that the source of the information contained in the obituaries indicating that Tammy is Ricky's wife could not be confirmed and therefore the obituaries are hearsay.

We review the trial court's evidentiary rulings for abuse of discretion. *Owens-Corning Fiberglas Corp. v. Malone*, 972 S.W.2d 35, 43 (Tex. 1998). To get a reversal of a judgment based on the trial court's error in admitting evidence, the complaining party must show that the trial court committed an error and the error was reasonably calculated to cause and probably did cause rendition of an improper verdict. *Gee v. Liberty Mut. Fire Ins. Co.*, 765 S.W.2d 394, 396 (Tex. 1989). In reviewing a cause tried before the court, the appellate court generally assumes that the trial court disregarded any incompetent evidence. *Gillespie v. Gillespie*, 644 S.W.2d 449, 450 (Tex. 1982). The admission of such evidence will generally not require reversal of the judgment when there is competent evidence to authorize its rendition. *Id*.

Hearsay is an out of court statement offered as evidence to prove the truth of the matter asserted. TEX. R. EVID. 801(d). Generally, Texas courts consider newspaper articles inadmissible hearsay. *Austin v. Houston Lighting & Power Co.*, 844 S.W.2d 773, 791 (Tex. App.–Dallas 1992, writ denied). In some instances, the hearsay rule does not bar the admissibility of news reports used to show surrounding circumstances and public perceptions of the subject matter covered by the article. *Id*. at 791.

Rita Hughes testified that she owns an online newspaper known as ShelbyCountyToday.com. She explained that she usually receives information for obituaries from the funeral home. She retypes the information and posts it. She does not know who actually provides the information and does not attempt to verify it. The two exhibits Derek complains of are obituaries posted April 30, 2007 and July 30, 2007. Both included a reference to "Ricky Barbee and wife Tammy of Center" as survivors of the decedent. Tammy introduced the obituaries to prove her reputation in the community as Ricky's wife. Therefore, they were offered to prove the truth of the matter asserted. Because Tammy had the burden to prove that they represented to others that they were married, this is not a situation covered by the exception allowing a news report to show the surrounding circumstances of the article's subject matter. *See King v. City of Dallas*, 374 S.W.2d 707, 711-12 (Tex. Civ. App.–Dallas 1964, writ ref'd n.r.e.). Thus, the trial court abused its discretion in admitting the two obituaries. However, we assume the trial court disregarded this evidence. *See Gillespie*, 644 S.W.2d at 450. Further, the admission of the obituaries was not calculated to cause and probably did not cause the rendition of an improper judgment because if that evidence is excluded, there remains sufficient evidence to support the trial court's determination that an informal marriage existed between Tammy and Ricky. *Id*. We overrule Derek's fourth issue.

## CONCLUSION

The evidence is legally and factually sufficient to support the trial court's determination that Tammy and Ricky had an informal marriage. Derek has raised no reversible error.

We *affirm* the trial court's final divorce decree and final protective order.

**BRIAN HOYLE**
Justice

Opinion delivered October 20, 2010.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*

(PUBLISH)