IN RE E.D.L., A CHILD

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO.  2-02-211-CV

IN THE INTEREST OF 

E.D.L., A CHILD 

------------

FROM COUNTY COURT AT LAW NO. 1 OF WICHITA COUNTY

------------

OPINION

------------

I.  INTRODUCTION

Appellant K.B.P. appeals the trial court’s judgment terminating her parental rights to her daughter E.D.L.  In three issues, Appellant presents an issue of first impression regarding the trial court’s subject matter jurisdiction over the case, and she challenges the legal and factual sufficiency of the evidence to support the court’s finding that terminating her parental rights to E.D.L. was in the child’s best interest.  We affirm.

II.  BACKGROUND FACTS AND PROCEDURAL HISTORY

E.D.L. was born on August 17, 1998, when Appellant was seventeen years old.  Appellant has struggled with substance abuse problems since she was eleven or twelve years old.  Since that time she has often surrounded herself with friends who have contributed to her drug problem, for which she has sought help and relapsed more than ten times. 

Appellant continued to use drugs after E.D.L. was born.  In April 2000, the Texas Department of Protective and Regulatory Services (“TDPRS”) investigated an allegation of child abuse or neglect involving Appellant and E.D.L.  Appellant tested positive for cocaine and marijuana, and she agreed to undergo inpatient treatment; however, she failed to complete the program. 

On November 5, 2000, TDPRS investigated another allegation of abuse after receiving information that Appellant had intentionally burned the back of E.D.L.’s hand with a curling iron and that Appellant was regularly using drugs. TDPRS investigator Derek Andrews found a burn mark on E.D.L.’s hand, and he also detected the scent of marijuana when he went to Appellant’s home. Appellant claimed that E.D.L. had burned herself either when she grabbed the curling iron or when Appellant was not in the bathroom.  Appellant admitted to smoking marijuana, but she refused TDPRS’s requests that she submit to a drug test.  Appellant later admitted that she was on pills the day E.D.L. was burned. 

Investigator Andrews next visited Appellant’s residence on November 14, after Appellant accused her sister of trying to kidnap E.D.L.  Andrews asked Appellant to leave E.D.L. in the care of a relative because the floor in her residence was littered with trash, numerous cigarette butts, and an open bottle of pills.  Andrews again asked Appellant to take a drug test, but she did not comply with the request.  Appellant did leave E.D.L. with her great-grandmother, but the next day Appellant advised TDPRS of her intent to leave E.D.L. with her sister, who also used cocaine and had a prior history with TDPRS.  The child was eventually removed from Appellant’s sister on November 29, 2000. 

The following day, TDPRS filed its original petition requesting an ex parte order naming the agency as the temporary managing conservator of E.D.L.  A full adversary hearing was scheduled for December 12, 2000, but because TDPRS was unable to locate and serve Appellant until January 11, 2001, the hearing was delayed until January 19, 2001.  Initially, TDPRS’s plan for E.D.L. was one of family reunification, but TDPRS’s position eventually changed due to Appellant’s inability and unwillingness to comply fully with TDPRS’s service plan.  Despite agreeing to comply with the plan, Appellant failed to do so.  Consequently, TDPRS changed its plan from reunification to termination.  

On September 10, 2001, TDPRS filed a first amended petition, alleging that termination was in the best interest of E.D.L. and that Appellant’s actions constituted grounds for termination under subsections D, E, K, N, O, and/or P of section 161.001(1) of the Texas Family Code.  
Tex. Fam. Code Ann. 
§ 161.001(1)(D), (E), (K), (N), (O), (P) (Vernon 2002).
(footnote: 1)  After a bench trial on May 7, 2002, the court entered a decree of termination in which it found that TDPRS had proven subsections D, E, N, O, and/or P as grounds for terminating Appellant’s parental rights to E.D.L. and further determined that termination was in the best interest of E.D.L. 

III.  TRIAL COURT’S SUBJECT MATTER JURISDICTION

In her first issue, Appellant 
contends that the trial court erred in concluding that it had subject matter jurisdiction over the case because the court lost jurisdiction when it failed to hold an adversary hearing within fourteen days after TDPRS took possession of the child as required by sections 262.201(a) and (b) of the Texas Family Code.  
Appellant thus argues that every order entered after the trial court lost jurisdiction, including the termination decree, was void.  TDPRS responds that the trial court did not lose jurisdiction because the legislature did not intend that section 262.201(a) be jurisdictional; rather, TDPRS contends that section 262.201(a) is procedural.  We agree with TDPRS’s position.

Section 262.201 provides, in pertinent part:

Unless the child has already been returned to the parent, managing conservator, possessory conservator, guardian, caretaker, or custodian entitled to possession and the temporary order, if any, has been dissolved, 
a full adversary hearing shall be held not later than the 14th day after the date the child was taken into possession by the governmental entity
.

At the conclusion of the full adversary hearing, the court shall order the return of the child to the parent, managing conservator, possessory conservator, guardian, caretaker, or custodian entitled to possession unless the court finds sufficient evidence to satisfy a person of ordinary prudence and caution that:

there was a danger to the physical health or safety of the child which was caused by an act or failure to act of the person entitled to possession and for the child to remain in the home is contrary to the welfare of the child;

the urgent need for protection required the immediate removal of the child and reasonable efforts, consistent with the circumstances and providing for the safety of the child, were made to eliminate or prevent the child's removal; and

reasonable efforts have been made to enable the child to return home, but there is a substantial risk of a continuing danger if the child is returned home.

Tex. Fam. Code Ann. 
§ 262.201(a), (b) (Vernon 2002) (emphasis added).

A.  Facts Relevant to Appellant’s Adversary Hearing

TDPRS removed E.D.L. from Appellant’s possession on November 29, 2000.  Appellant’s full adversary hearing was set for December 12, 2000, but  TDPRS had trouble locating and serving Appellant.  On December 1, 2000, TDPRS attempted service on Appellant, but it came back “returned, unable to locate.” 

As a result, on December 12, TDPRS made an oral motion to extend the emergency order and to reschedule the full adversary hearing for December 22, 2000, which the court granted.  When the date of the second hearing arrived, Appellant still had not been located and served, so the court again granted TDPRS’s oral motion to extend the emergency order and to reschedule the full adversary hearing.  This time, the hearing was set for January 5, 2001.  

On January 3, 2001, TDPRS requested service on Appellant, and it was yet again “returned, unable to locate.”  At the third attempted hearing, on January 5, TDPRS made another oral motion for continuance and to extend the emergency order, which the trial court granted, rescheduling the full adversary hearing for January 19, 2001.  TDPRS finally located and served Appellant on January 11, and the court conducted the full adversary hearing on January 19, 2001.
(footnote: 2)  At the hearing, along with TDPRS and E.D.L.’s guardian ad litem, Appellant appeared pro se.  All agreed to TDPRS’s proposed temporary orders that E.D.L. should remain in foster care. 

Appellant filed a motion to dismiss for lack of subject matter jurisdiction on March 4, 2002 raising the same argument she does now concerning the fourteen–day time frame under section 262.201.  The trial court conducted a hearing on Appellant’s motion and denied her requested relief. 

B.  Statutory Construction

We are faced with an issue of first impression in Texas regarding this question of statutory interpretation.  
See Wichita County v. Hart
, 917 S.W.2d 779, 783 (Tex. 1996) (“If a statute’s wording does not indicate whether the legislature intended to make a provision jurisdictional, we must resolve the issue by applying the rules of statutory construction.”); 
State v. Gracia
, 56 S.W.3d 196, 199 (Tex. App.—Fort Worth 2001, no pet.) (same)
.  In determining whether the Legislature intended a provision to be jurisdictional, courts have historically looked to two factors:  “(1) the presence or absence of specific consequences for noncompliance and (2) the consequences that result from each possible interpretation.”  
Helena Chem. Co. v. Wilkins
, 47 S.W.3d 486, 495 (Tex. 2001) (citations omitted).

We are to strictly construe statutes concerning
 involuntary termination of parental rights in favor of parents.  
Holick v. Smith
, 685 S.W.2d 18, 20 (Tex. 1985); 
In re A.V.
, 849 S.W.2d 393, 400 (Tex. App.—Fort Worth 1993, no writ).
  Our primary objective in construing a statute, however, is to determine and give effect to the legislature’s intent.  
Phillips v. Beaber
, 995 S.W.2d 655, 658 (Tex. 1999).
  In determining the legislature’s intent, we first look to the statute’s plain and common meaning and presume that the legislature intended the plain meaning of its words.  
Fleming Foods v. Rylander
, 6 S.W.3d 278, 282 (Tex. 1999).  Further, in construing a statute, whether or not the statute is considered ambiguous on its face, we may consider among other matters the:  (1) object sought to be attained; (2) circumstances under which the statute was enacted; (3) legislative history; (4) common law or former statutory provisions, including laws on the same or similar subjects; (5) consequences of a particular construction; (6) administrative construction of the statute;  and (7) title (caption), preamble, and emergency provision.  
Tex. Gov’t Code Ann. 
§ 311.023 (Vernon 1998); 
see also
 
Brown v. Owens
, 674 S.W.2d 748, 750 (Tex. 1984) (In determining the legislature’s intent, “we must consider the entire Act, its nature and object, and the consequences which follow from each construction.”).

We also determine legislative intent from the entire act and not just from isolated portions.  
State Dep’t of Highways & Pub. Transp. v. Gonzalez
, 82 S.W.3d 322, 327 (Tex. 2002).  We must presume that the legislature chose its words carefully, recognizing that every word in a statute was included for some purpose and that every word excluded was omitted for a purpose.  
In re M.J.M.L.
, 31 S.W.3d 347, 354 (Tex. App.—San Antonio 2000, pet. denied); 
Renaissance Park v. Davila
, 27 S.W.3d 252, 256 (Tex. App.—Austin 2000, no pet.).  Likewise, we presume the legislature intended a just and reasonable result in enacting a statute.  
Tex. Gov’t Code Ann
. § 311.021(3) (Vernon 1998).  We will not construe a statute in a manner that will lead to a foolish or absurd result when another alternative is available.  
S.W. Bank v. Info. Support Concepts, Inc
., 85 S.W.3d 462, 464 (Tex. App.—Fort Worth 2002, pet. filed).

C.  Application of Law to the Facts

Appellant focuses on the language in section 262.201(a), which states that the full adversary hearing “shall be held not later than the 14
th
 day after the child was taken into possession.”  
Tex. Fam. Code Ann. 
§ 262.201(a).  Appellant argues that once TDPRS initially takes possession of a child, the trial court has subject matter jurisdiction over the case only for fourteen days until the adversary hearing.  Appellant contends that TDPRS must meet its burden of proof under section 262.201(b) at the hearing; otherwise, the court loses jurisdiction over the lawsuit.  Appellant argues that because TDPRS did not meet its burden of proof at the first scheduled adversary hearing-because the hearing was postponed-the court lost jurisdiction over the lawsuit and all subsequent orders were void.  Appellant further argues that the language of the statute concerning the fourteen–day time frame is mandatory and that subsection (f) of section 262.201 provides a mechanism for dealing with a parent whose location is unknown.
(footnote: 3)  

By Appellant’s reasoning, because the court did not conduct the adversary hearing on December 12, 2000, TDPRS failed to meet its burden of proof, the trial court lost jurisdiction over the case, and the case was therefore dismissed by operation of law, which should have allowed Appellant to regain possession of E.D.L.  Appellant voices her concern that TDPRS’s position in this case is ripe for abuse.  She argues that, with wrong motives, TDPRS could unilaterally postpone or otherwise delay the adversary hearing by purposefully being unsuccessful in serving a parent and then by claiming that the hearing was not needed as a result.
(footnote: 4)  We are not persuaded by Appellant’s position.

The code construction act defines “shall” as follows:  “‘Shall’” imposes a duty.”  
Tex. Gov’t Code Ann. 
§ 311.016(2) (Vernon 1998).  Courts generally construe “shall” as mandatory; however, it “may be and frequently is held to be merely directory.”  
Chisholm v. Bewley Mills
, 155 Tex. 400, 287 S.W.2d 943, 945 (Tex. 1956); 
see also Albertson’s, Inc. v. Sinclair
, 984 S.W.2d 958, 961 (Tex. 1999).  The specific issue with which we are confronted, however, is not which of these two labels, “mandatory” or “directory,” we should affix to the fourteen–day hearing provision in section 262.201(a).  
See
 
State v. $435,000
, 842 S.W.2d 642, 644 (Tex. 1992)
.  Rather, as the supreme court has stated, “More precisely the issue is not whether ‘shall’ is mandatory, but what consequences follow a failure to comply.”
  
Id
.
(footnote: 5)
 Section 262.201 does not contain specific consequences for noncompliance with the fourteen–day limitation.  
See 
Tex. Fam. Code Ann. 
§ 262.201;
 Helena Chem
. 
Co.
, 47 S.W.3d at 495.  Despite language stating that the hearing “shall be held not later than the 14
th
 day after the date the child was taken into possession,” the statute has no corresponding provision dictating dismissal for noncompliance.  
Tex. Fam. Code Ann. 
§ 262.201(a); 
see also
 
Helena Chem
. 
Co.
, 47 S.W.3d at 495 (citing 
$435,000
, 842 S.W.2d at 644 (“If the Legislature had intended dismissal to be the consequence of a failure to hear a forfeiture case within the prescribed period, it could easily have said so.”)); 
Sinclair
, 984 S.W.2d at 961 (“[J]ust because a statutory requirement is mandatory does not mean that compliance with it is jurisdictional.“)
.

In support of its position, TDPRS directs us to several cases in which courts have determined that compliance with mandatory statutory language is not jurisdictional.  
See 
$435,000
, 842 S.W.2d at 644
; 
Fountain v. Knebel
, 45 S.W.3d 736, 739 (Tex. App.—Dallas 2001, no pet.); 
Honts v. Shaw
, 975 S.W.2d 816, 820 (Tex. App.—Austin 1998, no pet.); 
Ex parte Brown
, 875 S.W.2d 756, 760 (Tex. App.—Fort Worth 1994, orig. proceeding).

In 
$435,00
0
, the supreme court analyzed a statute that “‘a time for hearing on forfeiture shall be set within 30 days’ of the filing of [a verified] answer.”  842 S.W.2d at 642.  The court stated, “The purpose of the provision appears to have been to ensure a prompt resolution of forfeiture actions,” but concluded that dismissal was not the intended consequence of a failure to hear a forfeiture case within the prescribed period. 
 Id
. at 643.  Instead, the court stated that while “shall” in the context of the statute was “plainly mandatory,” the remedy for noncompliance with the provision “afford[ed] the parties the right [to seek mandamus relief] to compel the trial court to hear the case promptly.”  
Id
. at 644.

Similarly, 
Fountain
 also addressed a timing provision in the family code relating to a hearing following the issuance of an associate judges’s ruling.  45 S.W.3d at 739.  The court interpreted section 201.015(f) of the family code, which states, “The referring court . . . shall hold a hearing on all appeals not later than the 30th day after the date on which the initial appeal was filed with the referring court.”  
Tex. Fam. Code Ann. 
§ 201.015(f) (Vernon 2002); 
Fountain, 
45 S.W.3d 
at 739
. Under the court’s rationale, “the referring court does not lose jurisdiction if it fails to hear an appeal within thirty days after the appeal is filed. . . .  Rather, the thirty–day provision affords a party the right to compel the district court to hear the case promptly.”  
Fountain
, 45 S.W.3d at 739.

Likewise, in 
Brown
,
 we interpreted the predecessor to section 201.015(f)
, which was formerly found in section 54.012(h) of the government code.
(footnote: 6)  875 S.W.2d at 760.  
We stated that the purpose of this statutory deadline was “to require the prompt resolution of appeals from masters’ rulings” 
and held that, while the word “shall,” used in the statute was mandatory, it did not automatically follow that a district court lost jurisdiction if the parties failed to comply with the timing provision.  
Id.
  Instead, 
Brown
 held that “the mandatory provision affords the parties the right to compel the district court to hear the case promptly, . . . [and] [i]f the district court refuses, [the statute] provides a basis for relief by mandamus, but not for dismissal for want of jurisdiction.”  
Id
. 

The Austin Court of Appeals also followed 
$435,000
 when interpreting section 232.012(d) of the election code, which states, “The judge shall set the contest for trial for a date not later than the fifth day after the date by which the contestee must answer.”  
Tex. Elec. Code Ann. 
§ 232.012(d) (Vernon 1986); 
Honts
, 975 S.W.2d at 820.  T
he 
Honts
 court concluded that this timing provision “compel[led] the trial court to set the election contest for trial within a specific period of time.”  975 S.W.2d at 820.  Because the court reasoned, however
, that the purpose of the statute would not be served if noncompliance resulted in dismissal of an election contest, the court held that the failure to comply with the statute did not deprive the trial court of subject matter jurisdiction.  
Id
.

We are persuaded that the same reasoning in 
$435,000
, 
Fountain
, 
Honts
, and 
Brown
 applies to the language in section 262.201(a) of the family code.  We agree with TDPRS that the purpose of section 262 is to afford parents the opportunity to challenge TDPRS’s right to retain any children whom TDPRS has taken into custody under an ex parte order from the court.  
See
 
Tex. Fam. Code Ann. 
§ 262.201(c).  A full adversary hearing thereby requires that the court enter temporary orders governing any children taken into custody, pending a full adjudication of parental rights at the termination hearing.  
See id.
 
§ 262.  As one commentary has noted:

The term “full adversary hearing” terminology appears nowhere else in the Family Code, nor anywhere else in Texas law for that matter.  The term appears to be intended to contrast the ex parte hearings described earlier in this chapter.  Practitioners sometimes refer to these as the “fourteen day” hearing, as it is mandated to be held within 14 days after the child is taken into possession.  
Sometimes, the mandate is delayed and the full adversary hearing must be continued 
thanks to difficulties with achieving service on respondent parents or the natural delay caused by the appointment of counsel for indigent parents.

John T. Sampson & Harry L. Tindall
, 
Texas Family Code Ann.
 § 262.201 cmt. (12
th
 ed. 2002) (emphasis added). 

The fourteen–day limitation affords parents a prompt, orderly procedure by which they can present their case and hold TDPRS to its evidentiary burden.  
See
 
Chisholm
, 287 S.W.2d at 945.  In the event a full adversary hearing is not held within fourteen days, section 262.201 provides both the parents and TDPRS the right to compel the trial court by mandamus to conduct the adversary hearing promptly.  
See $435,000
, 842 S.W.2d at 644; 
Fountain
, 45 S.W.3d at 739
; 
Honts
, 975 S.W.2d at 820
; Brown
, 875 S.W.2d at 760
.
 

We hold that the trial court did not err in denying Appellant’s motion to dismiss because the fourteen–day requirement is not jurisdictional.  Accordingly, we overrule Appellant’s first issue.

IV.  SUFFICIENCY OF THE EVIDENCE

In her second and third issues, Appellant complains that the trial court erred in terminating her parental rights because the evidence was legally and factually insufficient to establish that termination of the parent-child relationship was in the best interest of E.D.L.  We disagree.

A.  Standards Applicable in Termination Proceedings

In proceedings to terminate the parent-child relationship brought under section 161.001 of the family code, the petitioner must establish one or more of the acts or omissions enumerated under subdivision (1) of the statute and must also prove that termination is in the best interest of the child.  
T
EX.
 F
AM.
 C
ODE
 A
NN.
 § 161.001 (Vernon 2002); 
Richardson v. Green
, 677 S.W.2d 497, 499 (Tex. 1984).  Termination may not be based solely on the best interest of the child as determined by the trier of fact; rather, both elements must be established.  
Tex. Dep’t of Human Servs. v. Boyd
, 727 S.W.2d 531, 533 (Tex. 1987).

Termination of parental rights must be established by clear and convincing evidence.  
Tex. Fam. Code Ann. 
§ 161.206(a) (Vernon 2002).  The higher burden of proof in termination proceedings alters the appellate standards of review for both legal and factual sufficiency challenges.  
In re J.F.C
., 96 S.W.3d 256, 264-65 (Tex. 2002)
; In re C.H.
, 89 S.W.3d 17, 25 (Tex. 2002)
.  With respect to a legal sufficiency issue, we must “look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true.”  
In re J.F.C
., 96 S.W.3d at 266.
  In determining a factual sufficiency issue,
 
our inquiry is whether, based on the entire record, a fact finder could reasonably form a firm conviction or belief that the parent violated one of the provisions of section 161.001 and that the termination of the parent’s parental rights would be in the best interest of the child.  
In re C.H
., 89 S.W.3d at 25.

B.  Best Interest of the Child

Appellant does not challenge the legal or factual sufficiency of the five grounds for termination, which the trial court enumerated in the termination decree.  We, therefore, are only reviewing the legal and factual sufficiency of the evidence supporting the court’s finding that termination of Appellant’s parental rights was in E.D.L.’s best interest.  
See
 T
EX.
 F
AM.
 C
ODE
 A
NN.
 § 161.001; 
Richardson
, 677 S.W.2d at 499.

Factors we consider in deciding whether termination is in a child’s best interest include:  the desires of the child; the present and future physical and emotional needs of the child; the present and future emotional and physical danger to the child; the parental abilities of the person seeking custody; programs available to assist those persons in promoting the best interest of the child; plans for the child by those individuals or by the agency seeking custody; the acts or omissions of the parent that may indicate that the existing parent-child relationship is not appropriate; and any excuse for the acts or omissions of the parent.  
Holley v. Adams
, 544 S.W.2d 367, 371-72 (Tex. 1976); 
In re D.T.
, 34 S.W.3d at 641.  Proof of acts or omissions under section 161.001(1) may also be probative of whether termination is in the child's best interest.  
In re C.H
., 89 S.W.3d at 27.

C.  Application of Law to the Facts

In addition to the above mentioned conduct and events concerning Appellant and E.D.L., the evidence in the record shows:  During trial, Appellant admitted to having a drug problem and stated that she struggles with sobriety every day.  She admitted to having been a heavy cocaine user and to smoking marijuana every day, but she also claimed that she never did drugs in front of her daughter.  Further, Appellant admitted to leaving E.D.L. with people whom she knew were drug users, but she stated that she trusted them and knew they would not hurt E.D.L.  Appellant testified that while she talked on the phone with people whom she knew used drugs, she did not see them anymore. Appellant also testified that she was not presently in any sort of treatment or counseling programs for her drug addiction, but that she was looking for a Narcotics Anonymous group. 

At the time of Appellant’s trial, Appellant had moved to Arkansas to live with her mother to lead a more stable life.  She testified that since moving to Arkansas, she had quit smoking marijuana and had been sober for two months. When questioned about whether she thought she should regain custody of E.D.L. based on her two-month period of sobriety, Appellant responded: “No, I don’t.” TDPRS then asked, “You don’t think you want custody?”  Appellant replied, “I -- I do not -- I’m not stable.  I cannot have -- I cannot raise my daughter.  Not right now.”  Appellant later testified, “I want what’s best for my daughter, which is not with me.”  When asked why she appeared for trial, Appellant testified:  “They sent me papers to come to court.  From Arkansas.  Telling me I’m going to go to jail if I don’t show up for court.  I’m here because I have to be here.”  Appellant admitted that she could not presently take care of her daughter, but that she wanted to be able to be in contact with E.D.L. in the future.  

TDPRS also offered the testimony of numerous workers at Child Protective Services (“CPS”), who were involved with Appellant and E.D.L.  Toni Loving, a CPS caseworker, testified that, upon TDPRS’s recommendation, the trial court ordered Appellant to submit to random drug tests, attend counseling, complete parenting classes, complete her GED, attend Narcotics Anonymous meetings, obtain employment, and allow TDPRS to have announced and unannounced home visits.  Loving stated that Appellant did attend and complete parenting classes.  Loving also testified, however, that Appellant attended less than half of the counseling sessions set up by CPS and characterized her compliance with TDPRS’s service plan as minimal as it pertained to employment, drug testing, and counseling.  

June Davison, who worked with Appellant after Loving, testified that while Appellant made efforts to comply with TDPRS’s service plan, they were not substantial efforts.  Davison also testified that Appellant had failed to submit to drug testing and that she had moved at least six times between October 2001 and May 2002.  According to Davison, when Appellant left Texas for Arkansas, she did not inform CPS.  Davison did state that Appellant had obtained her GED. 

Another CPS worker, Melynn Conway, testified that, in the event Appellant’s parental rights to E.D.L. were terminated, TDPRS intended either to unite E.D.L. with her natural father or to find a family who was willing to adopt her.  Additionally, CPS worker Marilyn Morgan testified that E.D.L. and her father were bonding during visits arranged by TDPRS.  In contrast, Morgan testified that while the bond between Appellant and E.D.L. used to be strong, “E.D.L. no longer [asked] about her mother,” and she testified that she thought E.D.L. saw Appellant “more as a big sister or friend; not really as a mother.” 

Loving, Davison, Conway, and Morgan all testified that termination was in the best interest of E.D.L.  During closing arguments, E.D.L.’s guardian ad litem suggested that the court might be able to place appropriate limitations and restrictions on Appellant, without terminating her parental rights, but he also stated that he did not have any concrete recommendations for the court. 

We have reviewed the record extensively, and under the applicable standards of review, we hold that the evidence was both legally and factually sufficient to constitute clear and convincing evidence to support the trial court’s finding that termination was in E.D.L.’s best interest.  
See
 
In re J.F.C
., 96 S.W.3d at 265-66;
 In re C.H
., 89 S.W.3d 25-26
.  Accordingly, we overrule Appellant’s second and third issues.

V.  CONCLUSION

Having overruled all of Appellant’s issues, we affirm the trial court’s judgment.

ANNE GARDNER

JUSTICE

PANEL B: LIVINGSTON, GARDNER, and WALKER, JJ.

DELIVERED:  April 10, 2003

FOOTNOTES
1:
Section 161.001(1) provides, in pertinent part:

The court may order termination of the parent-child relationship if the court finds by clear and convincing evidence:

(1) that the parent has:

. . . .

(D) knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child;

(E) engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child;

. . . .

(K) executed before or after the suit is filed an unrevoked or irrevocable affidavit of relinquishment of parental rights as provided by this chapter;

. . . .

(N) constructively abandoned the child who has been in the permanent or temporary managing conservatorship of the Department of Protective and Regulatory Services or an authorized agency for not less than six months, and:

(i) the department or authorized agency has made reasonable efforts to return the child to the parent;

(ii) the parent has not regularly visited or maintained significant contact with the child; and

(iii) the parent has demonstrated an inability to provide the child with a safe environment;

(O) failed to comply with the provisions of a court order that specifically established the actions necessary for the parent to obtain the return of the child who has been in the permanent or temporary managing conservatorship of the Department of Protective and Regulatory Services for not less than nine months as a result of the child's removal from the parent under Chapter 262 for the abuse or neglect of the child; [or]

(P) used a controlled substance, as defined by Chapter 481, Health and Safety Code, in a manner that endangered the health or safety of the child, and:

(i) failed to complete a court-ordered substance abuse treatment program; or

(ii) after completion of a court-ordered substance abuse treatment program, continued to abuse a controlled substance; [and]

(2) that termination is in the best interest of the child. 

Id
.

2:
We note that throughout the time TDPRS was trying to serve Appellant, she contacted TDPRS personnel on several occasions, but she would not tell them where she was living. 

3:
Section 262.201(f) of the family code provides:

When citation by publication is needed for a parent or alleged or probable father in an action brought under this chapter because the location of the parent, alleged father, or probable father is unknown, the court may render a temporary order without delay at any time after the filing of the action without regard to whether notice of the citation by publication has been published.  

Id
.

4:
Appellant does not argue, however, that TDPRS acted with wrong motives in this case.

5:
TDPRS cites case law in which courts have applied 
Chisholm
 and construed statutory timing provisions as being directory in nature.  
See
, 
e.g.
, 
Lewis v. Jacksonville Bldg. & Loan Ass’n
, 540 S.W.2d 307, 311 (Tex. 1976); 
Tex. Dep’t of Pub. Safety v. Whitefield
, 59 S.W.3d 294, 296 (Tex. App.—Waco 2001, no pet.); 
Tex. Dep’t of Pub. Safety v. Gratzer
, 982 S.W.2d 88, 91 (Tex. App.—Houston [1
st
 Dist.] 1998, no pet.); 
see also
 
Helena Chem.
 
Co.
, 47 S.W.3d at 498 (holding court had jurisdiction over claims under the Seed Arbitration Act because, while the Act’s timing requirement was not mandatory, submission to the Act was mandatory, absent waiver by the seller)
.
  Perhaps, as the supreme court has suggested, courts have interpreted “shall” to be directory to avoid the consequences of dismissal.  
See $435,000
, 842 S.W.2d at 644.  Rather than engaging in this seeming exercise in semantics, we agree with 
$435,000
 that our focus should be on the consequences that follow noncompliance.  
See id
.

6:
See
 Act of Apr. 30, 1987, 70
th
 Leg., R.S., ch. 148, § 2.74(a), 1987 Tex. Gen. Laws 534, 567, 
repealed by
 Act of Apr. 6, 1995, 74
th
 Leg., R.S., ch. 20, § 1, 1995 Tex. Gen. Laws 113, 241 (current version at 
Tex. Fam. Code Ann. 
§ 201.015(f)
).