

## Fourth Court of Appeals
### San Antonio, Texas

### MEMORANDUM OPINION

No. 04-21-00287-CV

**IN THE INTEREST OF L.I.C.S.**, a Child

From the 73rd Judicial District Court, Bexar County, Texas
Trial Court No. 2020PA01026
Honorable Susan D. Reed, Judge Presiding[1]

Opinion by:  Luz Elena D. Chapa, Justice

Sitting:  Rebeca C. Martinez, Chief Justice
Luz Elena D. Chapa, Justice
Lori I. Valenzuela, Justice

Delivered and Filed: March 16, 2022

AFFIRMED

This is an accelerated appeal from an order terminating appellant L.S.'s parental rights to

her child, L.I.C.S.[2]  On appeal, L.S. challenges the trial court's jurisdiction and the sufficiency of

the evidence supporting the trial court's findings as to grounds and best interest.  We affirm the

trial court's order of termination.

### BACKGROUND

On May 21, 2020, the Texas Department of Family and Protective Services filed an original

petition seeking temporary managing conservatorship of L.I.C.S. and termination of L.S.'s

---

[1] The Honorable David Canales is the presiding judge of the 73rd Judicial District Court.  The Honorable Susan Reed, sitting by assignment, signed the order of termination.
[2] To protect the identities of the minor child in this appeal, we refer to the parent and child by their initials.  *See* TEX. FAM. CODE ANN. § 109.002(d); TEX. R. APP. P. 9.8(b)(2).

parental rights.[3] The affidavit in support of the petition stated at the time of removal, L.S., along with her two children L.I.C.S. and S.S.,[4] lived with L.S.'s mother, Connie, and Connie's husband, Felipe. According to the affidavit, L.S. would leave her children with Connie and Felipe to go do drugs, specifically methamphetamine. On occasion, L.S. would take L.I.C.S. with her, and Connie and Felipe would have to search for her and L.I.C.S. On one of those occasions, Felipe found L.S. by a Wal-Mart doing drugs with other people, while L.I.C.S. slept in the car. Felipe found L.I.C.S. with L.S. by the same Wal-Mart on another occasion and reported L.S. "was out of her mind." The affidavit further provided L.S. was verbally and physically aggressive toward L.I.C.S. When asked by the Department Investigator about her drug use, L.S. admitted she used drugs and would test positive for methamphetamine if tested at that time.

The trial court signed an emergency removal order for L.I.C.S., named the Department temporary managing conservator, and appointed an attorney and guardian ad litem. The court also set June 4, 2020 for the full adversary hearing required by Chapter 262 of the Texas Family Code. Under this order, the Department temporarily placed L.I.C.S. with a family friend. Thereafter, the trial court reset the June 4, 2020 hearing to July 21, 2020. On July 21, 2020, a status hearing and Chapter 262 adversary hearing occurred. The trial court ultimately issued a temporary order as to L.I.C.S.'s father appointing the Department as temporary managing conservator, but it did not enter a temporary order as to L.S. The Department then placed L.I.C.S. with a foster family.

The case proceeded to a permanency hearing followed by a two-day bench trial on April 29, 2021 and May 5, 2021. The trial court heard testimony from multiple witnesses, including L.S.'s family members and friends, Department caseworkers and investigators, and L.S. After

---

[3] The Department also sought termination of L.I.C.S.'s father's parental rights, and his rights were ultimately terminated. He did not file a notice of appeal challenging the trial court's order of termination, and as a result, he is not a party to this appeal.
[4] S.S. is not a subject child to this appeal.

trial, the court found by clear and convincing evidence L.S. knowingly placed or allowed L.I.C.S. to remain in conditions that endangered his physical or emotional well-being; engaged in conduct or knowingly placed L.I.C.S. with persons who engaged in conduct that endangered his physical or emotional well-being; failed to comply with court-ordered provisions of the family service plan; and used a controlled substance in a manner that endangered L.I.C.S. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(D), (E), (O) & (P). The trial court also found by clear and convincing evidence termination of L.S.'s parental rights was in L.I.C.S.'s best interest. *See id*. § 161.001(b)(2). L.S. now appeals, arguing the trial court lacked jurisdiction to enter the order of termination and the evidence is insufficient to support the trial court's grounds for termination and the best-interest finding.

## JURISDICTION

We begin with L.S.'s argument challenging the trial court's jurisdiction. L.S. argues the court lacked jurisdiction to enter an order of termination because it failed to hold the Chapter 262 hearing and enter a temporary order applicable to her. According to L.S., because the court failed to hold the hearing and enter a temporary order against her, it did not have any authority to require L.S. to comply with her family service plan or terminate her parental rights.

Chapter 262 of the Texas Family Code sets forth the procedural requirements the Department must take when removing a child from his home. *In re C.M.D.*, No. 13-20-00402-CV, 2021 WL 497302, at *3 (Tex. App.—Corpus Christi–Edinburg Feb. 11, 2021, no pet.) (mem. op.). In urgent circumstances, Chapter 262 grants the Department emergency authority to remove a child immediately from his home without prior notice to the child's parents pursuant to an emergency removal order. *Id*. (citing TEX. FAM. CODE ANN. §§ 262.101, 262.104). Following the issuance of an emergency removal order, "a full adversary hearing shall be held not later than the 14th day after the date the child was taken into possession by the governmental entity, unless the

court grants an extension." TEX. FAM. CODE ANN. § 262.201(a). This hearing, commonly referred to as a Chapter 262 hearing, affords a parent the opportunity to present evidence and challenge the Department's evidence and right to retain the child. *C.M.D.*, 2021 WL 497302, at *3. After the hearing, a trial court may issue additional temporary orders appointing the Department as temporary managing conservator and ordering a parent to comply with a family service plan. *See* TEX. FAM. CODE § 262.201. However, if the full adversary hearing fails to show urgent circumstances justified the immediate removal of a child from his home, Chapter 262 mandates the child's return to the parent. *C.M.D.*, 2021 WL 497302, at *3 (citing TEX. FAM. CODE §§ 262.201(g)(2)).

These provisions are procedural, not jurisdictional. *In re J.M.C.*, 109 S.W.3d 591, 595 (Tex. App.—Fort Worth 2003, no pet.). If a party believes the trial court should have dismissed the termination proceeding and returned the child to the parent, the party must timely raise this complaint *before* a final order of termination occurs. *See id*. And, if a Chapter 262 hearing does not occur, the proper remedy is for a parent to compel the trial court by mandamus to conduct an adversarial hearing promptly and issue additional temporary orders. *Id*. Once a trial court renders a final order of termination, any complaints about its temporary orders, or lack thereof, are moot. *C.M.D.*, 2021 WL 497302, at *4; *In re A.K.*, 487 S.W.3d 679, 683 (Tex. App.—San Antonio 2016, no pet.) ("[A] temporary order is superseded by entry of a final order of termination, rendering moot any complaint about the temporary order."). There is nothing in Chapter 262 depriving a trial court of jurisdiction over a termination proceeding merely because an emergency removal order expired or a trial court did not hold a Chapter 262 hearing or enter temporary orders. *J.M.C.*, 109 S.W.3d at 595; *In re E.D.L.*, 105 S.W.3d 679, 685-88 (Tex. App.—Fort Worth 2003, no pet.) (holding trial court did not err in denying motion to dismiss because requirement to hold adversary hearing is not jurisdictional).

Here, the record shows a Chapter 262 hearing occurred on July 21, 2020, but it is unclear whether L.S. and her attorney appeared at the hearing. After the hearing, it appears the trial court did not enter a temporary order as to L.S. Nevertheless, the lack of a temporary order did not cause the court to lose jurisdiction over the case because Chapter 262's requirements are merely procedural. *J.M.C.*, 109 S.W.3d at 59. Additionally, the expiration of the emergency removal order did not deprive the court of jurisdiction. *Id.*; *In re E.D.L.*, 105 S.W.3d at 685-88. Thus, L.S.'s contention the trial court did not have authority to require her to comply with her family service plan and ultimately terminate her parental rights lacks merit. *See J.M.C.*, 109 S.W.3d at 59; *In re E.D.L.*, 105 S.W.3d at 685-88.

Any challenge regarding the lack of temporary orders or an argument asserting L.I.C.S. should have been returned to L.S. after the expiration of the emergency removal order should have been raised before the trial court signed the final order of termination. *See C.M.D.*, 2021 WL 497302, at \*4; *A.K.*, 487 S.W.3d at 683; *J.M.C.*, 109 S.W.3d at 595. In other words, L.S. should have brought the matter to the trial court's attention, and if unsuccessful, to our attention by mandamus, before the trial court terminated her parental rights. L.S. took no such action. Accordingly, because the trial court did not lose jurisdiction and L.S. did not properly raise this matter before the entry of a final order, L.S.'s complaint is moot and overruled.

### STANDARD OF REVIEW AND APPLICABLE LAW

A parent-child relationship may be terminated, pursuant to section 161.001 of the Family Code, only if the trial court finds by clear and convincing evidence one of the predicate grounds enumerated in subsection (b)(1) and termination is in a child's best interest. TEX. FAM. CODE ANN. § 161.001(b). Clear and convincing evidence requires "proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *Id.* § 101.007. To determine if this heightened burden of proof was met, we employ a heightened

standard of review by judging whether a "factfinder could reasonably form a firm belief or conviction about the truth of the State's allegations." *In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002). This standard guards the constitutional interests implicated by termination, while retaining the deference an appellate court must have for the factfinder's role. *Id.* at 23, 26. We do not reweigh issues of witness credibility but "'must defer to the [factfinder's] determinations, at least so long as those determinations are not themselves unreasonable.'" *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005) (quoting *Sw. Bell Tel. Co. v. Garza*, 164 S.W.3d 607, 625 (Tex. 2004)).

"When reviewing the sufficiency of the evidence, we apply the well-established [legal and factual sufficiency] standards." *In re J.M.G.*, 608 S.W.3d 51, 53 (Tex. App.—San Antonio 2020, pet. denied) (alteration in original) (quoting *In re B.T.K.*, No. 04-19-00587-CV, 2020 WL 908022, at *2 (Tex. App.—San Antonio Feb. 26, 2020, no pet.) (mem. op.)). In our legal sufficiency review, we review the evidence in the light most favorable to the finding and disregard all evidence a reasonable factfinder could have disbelieved or found incredible. *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002). We do not disregard undisputed evidence even if it does not support the trial court's finding. *Id.* In our factual sufficiency review, we consider the entire record and determine whether, in light of the entire record, any disputed evidence "is so significant that a factfinder could not reasonably have formed a firm belief or conviction" on the challenged finding. *Id.*

## DISCUSSION

### A. Legal and Factual Sufficiency of the Evidence to Support Grounds for Termination Under § 161.001(b)(1)(D) & (E)

The trial court terminated L.S.'s parental rights pursuant to grounds (D), (E), (O), and (P). When, as in this case, a parent challenges endangerment findings under subsection (D) and/or (E), we must address those grounds even if other predicate grounds support termination. *In re N.G.*,

577 S.W.3d 230, 235 (Tex. 2019). We must do this because termination on an endangerment ground has potential future consequences for parental rights to another child. *Id*.

### 1. Evidence Related to Subsection (D)

L.S. first argues the evidence was legally and factually insufficient to support termination under subsection (D). Subsection (D) requires the Department to prove by clear and convincing evidence the parent knowingly placed the child in or allowed the child to remain in conditions or surroundings that endangered the child's physical or emotional well-being. *See In re I.N.D.*, No. 04-20-00121-CV, 2020 WL 2441375, at *3 (Tex. App.—San Antonio May 13, 2020, pet. denied) (mem. op.). "Conditions or surroundings" establishing endangerment include "[i]nappropriate, abusive, or unlawful conduct by persons who live in the child's home or with whom the child is compelled to associate on a regular basis." *In re M.R.J.M.*, 280 S.W.3d 494, 502 (Tex. App.— Fort Worth 2009, no pet.). "Endanger" means to expose to loss or injury or to jeopardize a child's emotional or physical health. *Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987) (construing predecessor statute). A parent knowingly places or allows a child to remain in an endangering environment when the parent is aware of the potential danger but disregards it. *M.R.J.M.*, 280 S.W.3d at 502. The endangering conduct does not need to be directed at the child and the child does not need to suffer injury to satisfy the requirements of subsection (D). *Boyd*, 727 S.W.2d at 533; *I.N.D.*, 2020 WL 2441375, at *3. Rather, subsection (D) requires evidence showing the environment in which a child was placed endangered his or her physical or emotional health. *In re L.W.*, No. 01-18-01025-CV, 2019 WL 1523124, at *10 (Tex. App.—Houston [1st Dist.] April 9, 2019, pet. denied) (mem. op.) (citing *M.R.J.M.*, 280 S.W.3d at 502). A court may consider a parent's actions before the child's birth, including evidence of drug usage. *In re J.O.A.*, 283 S.W.3d 336, 345 (Tex. 2009). Additionally, "termination under subsection (D) may be based

upon a single act or omission." *In re B.N.D.*, No. 04-21-00286-CV, 2021 WL 6127883, at *2 (Tex. App.—San Antonio Dec. 29, 2021, no pet.) (mem. op.).

In this case, the Department produced evidence L.S. had a history of methamphetamine use, causing her to repeatedly abandon her children to feed her drug addiction. Both L.S.'s mother and aunt testified L.S. had been using drugs for over ten years. L.S.'s aunt Susanna described L.S. as a drug addict who repeatedly disappeared for long periods of time and left L.I.C.S. with L.S.'s mother. L.S.'s mother Connie confirmed Susanna's testimony, describing L.S.'s behavior as "disappearing acts." Connie explained before L.I.C.S. was born, the Department first became involved with their family because L.S. had disappeared and left her older daughter, S.S., with an ex-girlfriend. Connie further explained as a result of L.S.'s disappearance, she needed the Department's help. Eventually, Connie and her husband Felipe took custody of S.S.

As to L.I.C.S., Connie and Felipe testified they began caring for him as soon as he was born; L.S. and the children had moved in with them. Connie and Felipe further testified while living with them, L.S. would regularly abandon the children without telling anyone. Many times, she would leave in the middle of the night without telling anyone. According to Felipe, L.S. routinely left unexpectedly without any indication of where she was going or when she would return. Felipe further stated he knew L.S. was leaving to use drugs because she would return under the influence and exhibit odd behavior. Both Connie and Felipe testified L.S. exhibited "strange" behavior when she would return. Specifically, Connie testified L.S. would randomly fall asleep, and Felipe testified L.S. would sometimes return angry.

Additionally, Department caseworker Shamica Adkins testified L.S.'s drug usage was concerning. She testified L.S. needed mental health treatment because she had been diagnosed with bipolar disorder, depression, and anxiety. Adkins testified L.S. refused to seek treatment and instead continued to use methamphetamine. Adkins stated L.S. tested positive for

methamphetamine and amphetamine in June 2020, and after that, refused to complete any of the fifteen required drug tests or engage in drug treatment. Adkins also expressed concern about L.S.'s erratic behavior, testifying L.S. was "a little all over the place." In one interaction, L.S. pointed at random people and accused them of taking L.I.C.S. In another interaction, L.S. told Adkins she would run away with her son.

The Department also produced evidence L.S. had a lengthy arrest record. The record shows L.S. has been arrested multiple times before and during the pendency of this case and charged with assault and drug-related charges. Specifically, Department caseworker Paula Betancourt testified L.S. was arrested one time for aggravated assault and another time for drug possession after the Department removed L.I.C.S. from L.S.'s care. L.S. admitted she had been arrested for possession of methamphetamine after L.I.C.S. was born, but the State ultimately moved to have the case dismissed. L.S. also admitted she had been arrested a month before trial and charged with possession, and that case was pending at the time of trial.

This evidence is sufficient to show L.S. created an endangering environment for L.S. The trial court heard evidence establishing L.S. subjected L.I.C.S. to an environment of ongoing abandonment due to her unlawful conduct – methamphetamine use. The record shows L.S. had abandoned S.S. with a friend and could not be found because she was engaging in drug use. The record also shows L.S. continued to repeat this behavior after L.I.C.S. was born. The court heard testimony from both Connie and Felipe stating L.S. would routinely leave L.I.C.S. with them without telling them. Additionally, the record reflects L.S. exhibited problematic behavior due to her drug usage; she would abruptly fall asleep, exhibit anger, or act erratically. Finally, the record shows L.S. had been previously arrested for drug-related charges and was currently charged with possession.

This court has repeatedly recognized a parent's illegal drug use is inherently part of the "conditions or surroundings" of a child's environment and can amount to creating an endangering environment. *In re T.N.S.*, 230 S.W.3d 434, 438 (Tex. App.—San Antonio 2007, no pet.). This is because such conduct subjects a child to a life of uncertainty and instability, which in this case, it did. *See In re R.V.M.*, No. 04-14-00531-CV, 2015 WL 264880, at *2 (Tex. App.—San Antonio Jan. 21, 2015, no pet.) (mem. op.). Accordingly, we conclude the trial court could have reasonably formed a firm belief or conviction that L.S. knowingly placed or allowed L.I.C.S. to remain in conditions or surroundings that endangered his well-being. We therefore hold the evidence is both legally and factually sufficient to support the trial court's finding under subsection (D).

## 2. Evidence Related to Subsection (E)

L.S. next argues the evidence was legally and factually insufficient to support termination under subsection (E). To terminate parental rights pursuant to subsection (E), the Department must prove by clear and convincing evidence the parent engaged in conduct or knowingly placed the child with persons who engaged in conduct that endangered the child's physical or emotional well-being. TEX. FAM. CODE § 161.001(b)(1)(E). Subsection (E) requires us to determine whether evidence exists showing the endangerment of the child's well-being was the direct result of the parent's conduct, including acts, omissions, or failures to act. *T.N.S.*, 230 S.W.3d at 438-39. Unlike subsection (D), termination must be based on more than a single act or omission; a voluntary, deliberate, and conscious course of conduct by the parent is required. *In re J.W.*, 152 S.W.3d 200, 205 (Tex. App.—Dallas 2004, pet. denied). To support a finding of endangerment under subsection (E), the trial court may consider evidence of the parent's conduct both before and after the child's birth, including conduct occurring after the child was removed from the parent's care. *In re S.R.*, 452 S.W.3d 351, 360 (Tex. App.—Houston [14th Dist.] 2014, pet. denied); *T.N.S.*, 230 S.W.3d at 439.

Here, the same evidence supporting a finding under subsection (D)—L.S.'s continued methamphetamine use—also supports a finding under subsection (E). *T.N.S.*, 230 S.W.3d at 439 (pointing out a consolidated review of statutory grounds (D) and (E) can be appropriate because grounds are interrelated). It is well-settled law evidence of a parent's continued illegal drug use is evidence of a voluntary, deliberate, and conscious course of conduct that endangers a child's well-being. *In re K.J.G.*, No. 04-19-00102-CV, 2019 WL 3937278, at *5 (Tex. App.—San Antonio Aug. 21, 2019, pet. denied) (mem. op.). The trial court heard evidence showing for the past ten years, L.S. used methamphetamines and continued to use drugs after the Department removed L.I.C.S. from her care in March 2020. The court also heard testimony from Department caseworkers indicating L.S. tested positive for methamphetamine and amphetamine in June 2020 and refused to take another drug test. Finally, the court heard testimony L.S. had been recently arrested for drug possession and was awaiting trial on that charge. This evidence shows L.S. engaged in a conscious course of conduct directly resulting in endangerment to L.I.C.S. Accordingly, the trial court could have reasonably formed a firm belief or conviction that L.S. engaged in conduct that endangered L.I.C.S.'s well-being. We therefore hold the evidence is both legally and factually sufficient to support the trial court's finding under section 161.001(b)(1)(E).

Having determined the evidence legally and factually sufficient to support the trial court's findings under subsections (D) and (E), we need not address the trial court's findings under subsections (O) or (P). *See In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003) (holding a finding of only one predicate ground is necessary to satisfy section 161.001(b)(1)). We now turn to L.S.'s argument challenging the trial court's best-interest finding.

## B. Legal and Factual Sufficiency of the Evidence to Support Grounds for Termination under § 161.001(b)(2)

To terminate parental rights, a trial court must find by clear and convincing evidence that termination is in the child's best interest. TEX. FAM. CODE § 161.001(b). Under Texas law, there is a strong presumption the best interest of a child is served by keeping the child with a parent. *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006) (per curiam). However, a trial court must also presume "the prompt and permanent placement of the child in a safe environment is . . . in the child's best interest." TEX. FAM. CODE § 263.307(a). To determine whether a child's parent can provide the child with a safe environment, a court should consider the factors set out in section 263.307 of the Family Code.[5] Courts also apply the non-exhaustive *Holley* factors. *See Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976). Those factors include: (1) the desires of the child; (2) the present and future emotional and physical needs of the child; (3) the present and future physical danger to the child; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist these individuals to promote the best interest of the child; (6) the plans held by the individuals seeking custody; (7) the stability of the home of the parent and the individuals seeking custody; (8) the acts or omissions of the parent that may indicate that the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. *Id.* Not every factor must be proven for a court to find that termination is in the child's best interest. *C.H.*,

---

[5] These factors include: the child's age and physical and mental vulnerabilities; the frequency and nature of out-of-home placements; the magnitude, frequency, and circumstances of the harm to the child; whether the child has been the victim of repeated harm after intervention by the department; whether the child is fearful of returning to the child's home; the results of psychiatric, psychological, or developmental evaluations of the child, the child's parents, other family members, or others who have access to the child's home; whether there is a history of abusive conduct by the child's family or others who have access to the child's home; whether there is a history of substance abuse by the child's family or others who have access to the child's home; the willingness and ability of the child's family to seek out, accept, and complete counseling services and to cooperate with and facilitate an appropriate agency's close supervision; the willingness and ability of the child's family to effect positive environmental and personal changes within a reasonable period of time; whether the child's family demonstrates adequate parenting skills; and whether an adequate social support system consisting of an extended family and friends is available to the child. *See* TEX. FAM. CODE § 263.307.

89 S.W.3d at 27. And "[e]vidence of a single factor may be sufficient for a factfinder to form a reasonable belief or conviction that termination is in the child's best interest." *In re J.B.-F.*, No. 04-18-00181-CV, 2018 WL 3551208, at *3 (Tex. App.—San Antonio July 25, 2018, pet. denied) (mem. op.).

Here, in addition to the evidence of L.S.'s drug use, the Department produced evidence showing L.S. failed to engage in services. Department caseworker Paula Betancourt testified L.S.'s service plan required her to address her substance abuse and mental health diagnoses by engaging in a drug treatment program, attending individual counseling, and taking parenting classes. Betancourt testified she scheduled random weekly drug testing for L.S., and L.S. went only once in June 2020 when she tested positive for methamphetamine and amphetamine. L.S. did not attend any of the other required drug testing appointments. Betancourt also testified L.S. did not attend a drug treatment program despite the fact she said she would.

The Department also produced evidence L.S. did not complete counseling or parenting classes. Specifically, Department caseworker Adkins testified L.S. only recently started attending counseling sessions a month before trial, and therefore, she has not been successfully discharged. Adkins further testified L.S. completed only three parenting classes since March 2021. Additionally, L.S.'s counselor testified therapy was not going well. She testified L.S. admitted to drinking before her first counseling session and has not shown any signs of improvement. When asked to elaborate, L.S.'s counselor pointed to L.S.'s most recent arrest for drug possession and stated L.S. was regressing because she has continued to make poor choices by engaging in drug use.

The trial court also heard testimony from Dr. Jason Miller, the psychiatrist who performed an evaluation on L.S. Dr. Miller testified he had a difficult time evaluating L.S. because she was experiencing withdrawal symptoms. He testified L.S. did not answer some of his questions

because she kept "nodding off" during the evaluation. Although he had to wake her up approximately "20 times," he was able to learn L.S. had a long history of methamphetamine dependence. He testified despite the fact L.S. was aware of her appointment with him, it was clear she had engaged in drug use the night before the appointment. He concluded he believed she wanted to be reunited with L.I.C.S., but her actions showed otherwise.

At trial, L.S. disputed the evidence regarding her completion of the service plan. L.S. testified she had completed "five or six" parenting classes and is continuing the sessions. She also testified she was actively engaged in individual counseling and was currently working two steady jobs. She further indicated she was living in a two-bedroom apartment, and she believed it provided enough room for her and L.I.C.S., if the court were to return L.I.C.S. to her. She testified she lived with a male roommate who did not have a criminal record. Regarding her drug usage, L.S. admitted she used methamphetamine and tested positive "before," but she did not specify when she last tested positive. L.S. also testified she was unable to complete a drug treatment program because she could not find a program that had an opening.

The trial court also heard testimony from L.S.'s aunt, Melissa, who has planned to adopt L.I.C.S. Melissa testified she lives in Florida with her husband, and she and her husband are young working professionals who are capable of raising L.I.C.S. Melissa testified they would provide an active outdoor life for L.I.C.S. They have a ranch with three horses and spend many of their weekends at the ranch. They believe they would provide L.I.C.S. with a well-structured life, and they are dedicated to ensuring L.I.C.S. maintains a relationship with Connie and his sister, S.S. Both Connie and Susanna confirmed Melissa's testimony and opined Melissa would be a well-suited placement for L.I.C.S.

When viewing this evidence under the appropriate standards of review, we conclude it is legally and factually sufficient to support the trial court's best-interest finding. To begin, the

evidence supporting the trial court's findings under subsections (D) and (E) is probative on the issue of best interest. *See C.H.*, 89 S.W.3d at 28. This evidence shows L.S. has not resolved her serious substance abuse and has continued to engage in criminal activity related to drugs. It further establishes L.S. placed L.I.C.S. in conditions or surroundings that endangered him and engaged in a course of conduct that endangered his physical and emotional well-being.

The trial court also heard testimony L.S. failed to complete her service plan. While L.S. disputed this evidence and testified she attended more parenting classes than the Department caseworker recalled, the evidence was undisputed showing L.S. only recently started engaging in parenting classes and counseling services. "[E]vidence of improved conduct, especially of short-duration, does not conclusively negate the probative value of a long history of drug use and irresponsible choices." *See J.O.A.*, 283 S.W.3d at 346 (rejecting an appellate court's attempt to attribute greater weight to parent's recent improvements and less to parent's past challenges).

Finally, the record reflects L.I.C.S. was two years old at the time of trial and therefore, in need of constant care and supervision. The trial court repeatedly heard testimony from Department caseworkers and L.S.'s family members stating L.S. would consistently abandon L.I.C.S. with her mother Connie without indicating when she would return to care for L.I.C.S. And, while L.S. testified she now lived in a two-bedroom apartment, which she believed would provide a stable home for L.I.C.S., the trial court also heard evidence L.I.C.S. would be well cared for by his aunt, who planned to adopt him and provide him with a stable environment in Florida. Accordingly, when viewing all the evidence in the light most favorable to the trial court's best-interest finding, we conclude the trial court could have reasonably formed a firm belief or conviction that termination of L.S.'s parental rights was in L.I.C.S.'s best interest. *See J.F.C.*, 96 S.W.3d at 266. We further conclude any disputed evidence, viewed in light of the entire record, could have been reconciled in favor of the trial court's best-interest finding or was not so significant the trial court

could not have reasonably formed a firm belief or conviction termination was in L.I.C.S.'s best interest. *See id.* Therefore, we hold the evidence is legally and factually sufficient to support the trial court's best-interest finding, and we overrule L.S.'s final issue. *See* TEX. FAM. CODE § 161.001(b)(2).

## CONCLUSION

Based on the foregoing, we conclude the trial court did have jurisdiction to enter the order of termination, and the evidence is legally and factually sufficient to support the trial court's predicate grounds and best-interest finding. We therefore affirm the trial court's order terminating L.S.'s parental rights to L.I.C.S.

Luz Elena D. Chapa, Justice